821 So.2d 756 (2002)
Manor A. LOVE, Sr., d/b/a TLC
v.
E.L. HABETZ BUILDERS, INC., et al.
No. 2001-1625.
Court of Appeal of Louisiana, Third Circuit.
June 26, 2002.
*759 Bruce Achille Gaudin, Attorney at Law, Opelousas, LA, for Plaintiff/Appellant, Manor A. Love, Sr., d/b/a TLC.
Thomas Keith Regan, Privat & Regan, Crowley, LA, for Defendant/Appellants, St. Paul Fire & Marine Ins. Co., E.L. Habetz Builders, Inc.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, and JIMMIE C. PETERS, Judges.
SAUNDERS, Judge.
Manor Love, Sr., the Plaintiff, sued E.L. Habetz Builders, Inc. and St. Paul Marine Insurance Company, the Defendants, to recover money due under building contracts. After a trial on the merits, a judgment was rendered in favor of Love. As a result, the Defendants filed this appeal. For the following reasons, the judgment of the trial court is affirmed in part, amended in part, and reversed in part.

FACTS AND PROCEDURAL BACKGROUND
Love has operated a building construction company under the trade name of TLC (The Love Company) for more than twenty years. In the 1990's, he performed work for E.L Habetz Builders, Inc., a general contracting firm run by Ed Habetz of Crowley, for at least six different projects. One of those projects, the Eunice Nursing Home, led to this litigation.
Love was contracted by Habetz to furnish and install metal framing, sheetrock, and insulation for the Eunice Nursing Home. The original contract was for $451,750.00, and, over time, Love was paid $418,000.00 for materials and labor. During the course of the contract, Louisiana Drywall, a material supplier of the Eunice project, allegedly began raising the prices that it had originally quoted to Love and allegedly overbilled Love. Love disputed the balance with the company, and he refused to pay the bill. As a result, Louisiana Drywall filed a lien against Love, Habetz, and St. Paul in the amount of $85,157.83. Habetz posted a surety bond sufficient to satisfy the lien, and, although Love notified him of the ongoing dispute with Louisiana Drywall and reasons for the lien, he stopped paying Love for his work on the project. As a result, Love filed a lien against Eunice Nursing Home, Habetz, and St. Paul for $80,271.87 which was due on the Eunice project. At that point, Habetz terminated the contract with Love for the Eunice Nursing Home for *760 failure to pay the materialman and for the filing of the lien. Eventually, Louisiana Drywall reduced the price owed for the materials from $85,157.83 to $75,000.00, Love paid the $75,000.00, and the lien placed by Louisiana Drywall was released.
At the same time, Love was also working for Habetz at the Crowley High School. Habetz issued Love a separate subcontract for the installation of sheetrock at the high school. Love purchased materials from Norris Rader, Inc. and other suppliers for the project. At some point during the project, Rader and other suppliers sent unpaid bills to Habetz and Love. Fearing a lien would be filed, Habetz sent a letter to Love giving him three days to pay all suppliers on both the Crowley High job and the Eunice Nursing Home or he would terminate the Crowley High job.
Within three days, Love provided documentation to Habetz to show that all suppliers of the Crowley High job had been previously paid and that none of the suppliers were considering the filing of liens. In addition, he again provided documentation of the ongoing dispute with Louisiana Drywall regarding prices charged for the Eunice Nursing Home project and informed him that the lien on the Eunice Nursing Home project did not give him a legal right to terminate the Crowley High project.
Not long after, Habetz terminated the Crowley High project and refused to pay Love any more money for that project. Further, he refused to pay for four other completed projects which he had subcontracted to Love. As a result, Love filed a "Petition for Money Due" on April 25, 2000, for money due on the Eunice Nursing Home. In his petition, Love claimed that Habetz, Eunice Nursing Home, and St. Paul were indebted to him for $80,271.87. Subsequently, he filed a supplemental petition for money due on the other five projects. In his supplemental petition, he claimed that he was owed $24,286.30 for the Crowley High project along with $3,000.00 for tools located on the premises which Habetz converted to his own use. In addition, he claimed that he was owed $22,246.65 for four other projects which break down as follows:

Notre Dame School $18,319.32
Food Services ContractCrowley 1,365.00
Alternative SchoolCrowley 1,893.25
Ville Platte Housing 669.08
 __________
 $22,246.65

After a trial on the merits, the trial court rendered a judgment in favor of Love for the following amounts:

Eunice Nursing Home $49,208.47
Crowley High 14,286.30
Tools 3,000.00
Notre Dame School 18,319.32
Food Services ContractCrowley 1,365.00
Alternative SchoolCrowley 1,839.25
Ville Platte Housing 669.08
 __________
 $88,741.42

As a result of this judgment, the Defendants filed this appeal seeking a reversal of the judgment. In addition, the Plaintiff answered the appeal claiming he was entitled to additional money.

LAW AND ANALYSIS

STANDARD OF REVIEW
It is well settled in Louisiana that the findings of fact of the trial court will not be disturbed on appeal unless they are manifestly erroneous or clearly wrong. Stobart v. State, through D.O.T.D., 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989); Lawson v. White, 01-1173 (La.App. 3 Cir. 2/6/02); 815 So.2d 958. As long as the findings of the trial court are reasonable in light of the record, the appellate court may not reverse even if it would have weighed the evidence differently as a trier of fact. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La. *761 1990); Lawson, 01-1173; 815 So.2d 960-61.
On the other hand, when reviewing a question of law, the appellate court must simply decide whether the trial court was legally correct or incorrect. Jim Walter Homes, Inc. v. Jessen, 98-1685 (La. App. 3 Cir. 3/31/99); 732 So.2d 699 (citing Ducote v. City of Alexandria, 95-1269 (La. App. 3 Cir. 7/17/96); 677 So.2d 1118.) "If the trial court's decision was based on its erroneous application of law, rather that on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court." Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1071-72 (La.1983); Jim Walter Homes, Inc., 98-1685, p. 5; 732 So.2d at 702. In fact, the appellate court must conduct a de novo review of the entire record when it finds a reversible error of law or manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Lasha v. Olin Corp., 625 So.2d 1002 (La. 1993); Jim Walter Homes, Inc., 98-1685; 732 So.2d 699.

ASSIGNMENTS OF ERROR
On appeal, the Defendants assert the following assignments of error:
1. The trial court erred in awarding amounts allegedly due to Love after the Eunice Nursing Home contract had been justifiably terminated and erroneously awarded Love $33,738.60.
2. The trial court erred in awarding Love amounts in addition to and in excess of the original contract amount which were alleged as change orders and/or back charges.
3. The trial court erred in failing to find that Love breached the Crowley High job contract and that Habetz was justified in terminating the contract.
4. The trial court erred in awarding amounts allegedly remaining due under the contract and materials and tools on the job site in the amount of $22,246.55.
5. The trial court erred in finding that Love was entitled to $18,319.32 for the Notre Dame job.
The Plaintiffs answered the appeal asserting the following assignments of error:
1. The trial court erred in reducing the award for the Crowley High School project from $24,286.30 to $14,286.30.
2. The trial court erred in denying over $18,000 in claims for the work on the Eunice Nursing Home.
Because the assignments of error of the parties overlap, we will discuss the assignments relative to each project.

DEFENDANTS' ASSIGNMENT OF ERROR NO. 1
In their first assignment of error, the Defendants argue that the trial court committed manifest error when in it awarded Love $33,738.60 for money due on the Eunice Nursing Home contract after the Defendants justifiably terminated the contract. The Defendants assert that Love did not produce any evidence to substantiate the money due after the contract was terminated and that the sole basis for the award was the trial court's misinterpretation of Love's statement that he completed the contract work.
Upon review of the record, we note that there is ample evidence to conclude that Love completed the work. In his testimony, Love indicated that the work was complete. In addition, he introduced into evidence demand letters sent to the Defendants for the remaining balance due under the contract, a copy of the lien which he filed against the Defendants, and a schedule of project values. All of this evidence supported Love's contentions that *762 the project was complete and that the final payment of $33,738.60 was due in accordance with the contract. On the other hand, the Defendants produced little evidence to show that the contract was not complete. We have reviewed the record in its entirety and cannot find any evidence to reflect that there was work that had not been completed. In his Reasons for Judgment, the trial judge found that the basic contract had been completed satisfactorily and that there was a balance due of $33,738.60. The trial judge stated, "Even Mr. Habetz said he did the job.... He barred him from the job any longer but the job was basically done at that point." The trial judge acted within his discretion, and we will not disturb the award of $33,738.60. Hence, the Defendants' first assignment of error is without merit.

DEFENDANTS' ASSIGNMENT OF ERROR NO. 2 & PLAINTIFF'S ASSIGNMENT OF ERROR NO. 1
In his petition, Love requested additional money for eighteen items which resulted from back orders and change orders on the Eunice job. The trial judge evaluated the evidence regarding these items, and he awarded payment for some and denied payment for others. Those items are listed as follows:

ITEM PRICE AWARDED
# 1 COLUMNS $ 1,366.00 $ 1,366.00
# 2 RECESSED LIGHTS 600.00 600.00
# 3 WALL REPAIRS 389.00 389.00
# 4 KNEE WALLS 856.00 856.00
# 5 DRYWALL CHANGES 2,300.00 2,300.00
# 6 DOORWAY REFRAMING 5,500.00 5,500.00
# 7 FIRE WALL REPAIRS 465.00 465.00
# 8 CEILING REPAIRS 375.00 375.00
# 9 FURR 482.00 482.00
# 10 FURR REBUILDING 1,800.00 0.00
# 11 WALL REPLUMBING 5,900.00 0.00
# 12 WALL REFRAMING 1,500.00 1,500.00
# 13 SLAB SHIMMING 1,109.00 0.00
# 14 WINDOW FRAMES 6,689.26 0.00
# 15 L-TRIM 1,877.14 250.00
# 16 NURSE'S STATION 1,100.00 0.00
# 17 WALLS TO HIDE CARTS 1,016.07 1,016.07
# 18 CHASE WALLS 360.80 360.80
 __________ __________
 $33,695.27 $15,469.87

Habetz did admit that he authorized the work items for item numbers two, five, twelve, and seventeen, and he did not dispute the award for those items. However, on appeal, he asserts that the trial court erred in awarding money to the Plaintiff for items one, three, four, six, seven, eight, nine, fifteen, and eighteen. In Love's answer to the appeal, he asserts that the trial judge erred in failing to award damages for items ten, eleven, thirteen, fourteen, and sixteen; in addition, he argues that the trial judge erred in only awarding $250 for item fifteen instead of $1,877.14.
Upon review of the record, we will discuss each item with the exception of items two, five, twelve, and seventeen because they are not disputed. First, we will address those items which the Defendants dispute. For item number one, the trial judge awarded $1,366.00 to Love for the labor and materials to build columns in wings A, B, C, D, and E of the nursing *763 home. Love submitted a change order into evidence regarding this item. This evidence indicates that these columns were installed by Love at the request of Habetz to correct the mistakes of another contractor. Next, for item number three, Love was awarded $389.00 to repair walls which were damaged by another subcontractor. As part of his evidence, Love introduced a work request signed by Kelsie Latiolais, the superintendent on the job for Habetz, approving the repairs. For item number four, Love was awarded $856.00 for framing and sheet rocking knee walls in the chapel and beauty shop. During the trial, Love testified that, in the original plans, the walls facing the hall in these rooms were to be constructed of glass and that they did not install sheetrock to accommodate the glass. Further, he testified that Latiolais made him construct knee walls after telling Love that he read the plans incorrectly. Then, after following Latiolais' instructions and constructing the knee walls, Latiolais made Love tear down the walls because Latiolais was wrong. Glass was later installed. In regards to these three items, the trial judge did not abuse his discretion in awarding money to Love.
For item number six, the trial judge awarded $5,500.00 to Love for reframing seventy-five doorways. Love testified that he discussed the door frames with Habetz prior to their construction and that he told Habetz that the door frames should be installed prior to the metal studs in the wall because they needed to be anchored to the slab. Further, he testified that Ronnie LeBouef, with E.L. Habetz, told him that these were special doors that would slip into place. However, Love testified that, when the door frames arrived, they could not slide into place and that all doorways had to be reframed. The Defendants argue that Love read the plans incorrectly and that he framed the doorways incorrectly knowing that they would not slip into place. As such, they request that we reverse the trial court on this issue. In light of the record, we find that there is sufficient evidence to support the judge's award of $5,500.00 to Love for the doorways, and we will not reverse that award.
Next, for item numbers seven and eight, Love was awarded money for repairing fire walls and ceilings. Love testified that the work was done to repair damages caused by other subcontractors. He testified that one worker put a hole in the wall with a pipe and that another fell through the ceiling. He introduced a change order into evidence regarding these items. The Defendants argue that Love should have billed the subcontractors who caused the damage instead of Love. However, upon review of the record, we note that Latiolais initialed the change order of behalf of E.L. Habetz; thus, we will not reverse this award. Similarly, the record supports the award of $482.00 for item number nine which involved work completed on the kitchen wall. The Defendants allege the trial erred in awarding $360.80 for item number eighteen. Like the previously mentioned items, Love testified that he built chase walls to correct a problem caused by the plumber. According to his testimony, the plumber placed pipes out of line, and this project was approved by Latiolais. Again, upon review of the record, we note that Latiolais signed the work order approving this project. Hence, the trial court was not manifestly erroneous in awarding damages for this item.
On appeal, Love alleged that the trial court erred in failing to award money for item numbers ten, eleven, thirteen, fourteen, fifteen, and sixteen; hence, we will now address those items. For item number ten, the trial judge denied Love's request for $1,800.00. The evidence indicates *764 that another subcontractor removed and threw away furring in the smoking room and that, as a result, Love had to do the job again. We have reviewed the change order and documentation provided by Love; however, we do not find any indication that Habetz approved this work. Thus, we will not reverse the trial court's denial of Love's claim. Next, for item number eleven, Love requested $5,900.00 for the replumbing of walls. Love introduced records from the job indicating that wings A, B, C, and D required replumbing which took ninety-five hours to complete. Again, the record indicates that another subcontractor caused damage which Love repaired. The Defendants argue that Love's claim should be against the subcontractor who caused the damage. There is no evidence to indicate that Habetz approved the work; thus, we find that the trial court acted within its discretion.
For item number thirteen, the trial judge denied Love's claim for $1,109.00 associated with shimming the slab. The evidence indicates that the slab was not evenly poured and created a problem near the walls. Love argues that Latiolais required that he install a metal track on the floor where it met the walls to fix the problem. Habetz argues that he did not approve this work request and that he did not know about it until after the work was performed. Again, there is no evidence to indicate that Habetz approved this work, and we do not find that the trial court erred in regard to this item.
Love also argues that the trial court erred in failing to award him $6,689.26 for the window frames. As part of the project, Love was to frame each window so that air conditioners could be installed. Love argues that Habetz did not supply all of the necessary mechanical drawings of the windows for him to make a proper bid. He argues that, because he followed only the drawings that he was provided, he made an improper bid and did the work incorrectly. Although the superintendent for Habetz was on the jobsite everyday, he alleges that he framed several windows before the Defendants told him that the framing would not accommodate the air conditioners. As a result, he had to tear down and reconstruct the window frames; hence, he asserts that he is entitled to the $6,689.26.
During the trial, Latiolais was called to testify on behalf of the Defendants and qualified as an expert in the field of general construction. In particular, he testified regarding the windows. He testified that there were several drawings regarding the windows with typical construction symbols which referenced other diagrams. He testified that there was nothing unusual about the drawings and that anyone in the construction industry should be familiar with the symbols. Further, he testified that the types of air conditioning units being installed were standard and that they generally required the same industry standards, widths, and framing techniques for installation. Hence, the Defendants argue that the trial court was correct in denying the award because Love was responsible for his own mistake. We recognize, "[u]nder the manifest error standard, the appellate court must accord great deference to the trier of fact's assessment of credibility and evaluation of expert testimony, unless the stated reasons of the expert are patently unsound." Landry v. Simon, 98-1386, p. 4 (La.App. 3 Cir. 3/17/99); 732 So.2d 587, 589. In light of the record, we do not find Latiolais' reasoning to be unsound; hence, we agree with the trial court in regard to this item.
For item number sixteen, Love alleges that the trial court erred in denying his award of $1,100.00 for the work *765 completed on the nurse's station. Love argues that Habetz requested that he raise the nurse's station when the original plans called for a level area. Habetz argues that the revised plans for the nurse's station were attached to Love's bid sheet and that the changes in the station were made prior to Love's bid. As such, he argues that, because the changes were made prior to Love's bid, Love is not entitled to more money. We have reviewed the record, and there is evidence to suggest that Love knew about the changes beforehand. Hence, we will not reverse the award of the trial court as Love requests.
Finally, both the Plaintiff and the Defendants dispute the award for item fifteen. The trial judge awarded $250.00 to Love for installing L trims on the inside of the patient rooms' door frames. Love argues that he is entitled to $1,877.14 for the work, and Habetz argues that he is not entitled to any money. Love argues that he is entitled to the entire sum because he performed corrective work to accommodate a door frame error. However, Habetz testified that he never approved this work. In his reasons for judgment, the trial judge stated that he found Habetz's testimony to be more credible on this issue, and we will not disturb this credibility determination. However, we are not satisfied that there is any evidence to support the trial judge's award of $250.00 to Love. In his reasons for judgment, the trial judge does not state how he arrived at such a figure or why he awarded the money especially when he found Love to be less credible. As such, we will reverse the award of $250.00 to Love because there is not sufficient evidence in the record to support the award.
Overall, we note that several items have been introduced into evidence regarding the eighteen items. The evidence contained such information as number of hours worked for each back order and change order, prices of materials for each back order and change order, and reasons for each back order and change order. In addition, minutes of project meetings were submitted which contained proof that some of these orders were discussed between the parties at the meetings. The trial judge evaluated each item separately, and the trial transcript reflects his reasoning for awarding some of these items and denying other items. With the exception of item fifteen, we are satisfied that he acted within his discretion.

DEFENDANTS' ASSIGNMENT OF ERROR NO. 3
On appeal, the Defendants argue that the trial judge erred in failing to find that Habetz was justified in terminating his Crowley High School contract with Love. The Crowley High School contract provides the following in regard to termination of the contract:
The contractor may, by written notice to the subcontractor, terminate the right to proceed with the work that has been delayed. The following types of occurrences will warrant termination of the contract.
1. Failure on the part of the subcontractor to pay its labor and supplies.
2. Failure to diligently prosecute the work as directed by the contractor.
3. Failure to perform any term or conditions set forth in this subcontract agreement.
4. Refusal to perform corrective work as directed.
5. Violation of any applicable laws and regulations.
6. Bankruptcy.
In particular, the Defendants argue that Love breached the first condition in failing *766 to pay Norris Rader, Inc. timely. They assert that they were forced to pay Norris Rader, Inc. on Love's behalf when they issued a joint check which constituted a breach of contract.
Upon review of the record, we note that a check was issued jointly to Love and to Norris Rader, Inc. and that the check was negotiated by Rader. However, the provisions of the contract between Habetz and Love did allow for the contractor to make co-payable checks to the subcontractor and material suppliers at the contractor's option. The record also contains a letter from Love sent to Habetz requesting that the check be issued to both parties. This issuance of a co-payable check alone is not sufficient to constitute a breach because it is allowed under contract.
Further, the contract provided that, upon default, the contractor would give the subcontractor notice of the default and three days to correct the matter and that failure to timely correct the matter would result in the termination of the contract. On October 28, 1999, Habetz sent notice to Love that he had defaulted in failing to pay the material suppliers for this job and the Eunice job. In addition, he gave Love three days to pay the suppliers for both jobs and provide documentation of such payments. Within the three days, Love produced documentation reflecting that all supplies had been paid for the Crowley High job, curing any default in the Crowley project. In addition, Love again produced documentation regarding the ongoing dispute between Louisiana Drywall and himself regarding the increase in prices for the Eunice job, and he informed Habetz that the Eunice job was unrelated to the Crowley job and that he could not terminate the Crowley job because of problems with the Eunice job. After receiving documentation from Love showing that all accounts with Rader and other suppliers were current for the Crowley job, Habetz still terminated the job.
Louisiana law is clear in regard to the law of contracts. Louisiana Civil Code Article 2046 provides, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Considering the terms of the contract, Habetz did not rightfully terminate the contract. Although failure of the subcontractor to pay labor and suppliers is an occurrence which could warrant termination, Love provided sufficient evidence to show that all labor and suppliers had been paid on the Crowley job. He did not breach the Crowley contract. Further, the status of the Eunice contract had no legal effect on the Crowley contract. As such, the trial court was not erroneous in determining that Love did not breach the Crowley contract and that Habetz wrongfully terminated the contract. The Defendants' assignment of error is without merit.

PLAINTIFF'S ASSIGNMENT OF ERROR NO. 1
Love argues that the trial court committed an error of law when it awarded him $14,286.30 instead of $24,286.30 for the work he completed prior to his termination on the Crowley job. The evidence in the record indicates that Love bid $114,400.00 for the Crowley job, but he signed a contract for $104,400.00. Subsequently, he wrote a letter to Habetz informing him that the amount of the contract should have been $114,400.00. In his reasons for judgment, the trial judge determined that the amount of the contract was $104,400.00. He then determined that Love was due $24,286.30 based on a quantum meruit from the material lists and *767 labor lists in evidence. But, because the amount of the contract was $10,000 less than the amount claimed by Love, he reduced Love's recovery by $10,000.00 and awarded $14,286.30.
Upon review, we find that the trial judge committed an error of law when he reduced the recovery. Quantum meruit awards are not dependent on a contract, but, instead, such awards are derived in the absence of a contract. In Brankline v. Capuano, 94-1630, p. 6 (La.App. 3 Cir. 5/3/95); 656 So.2d 1, 5, we noted that an award of quantum meruit involves the following:
Quantum meruit is an equitable remedy founded upon the principle that no one who benefits from the labor or materials of another should be unjustly enriched at the other's expense. The doctrine operates in the absence of a specific contract to imply a promise on behalf of the person to whom the benefit is conferred to pay a reasonable sum for the services or materials furnished. An individual establishing his right to recover under the doctrine of quantum meruit is to recover a reasonable amount to which he is entitled. An award of damages based on quantum meruit must be established with some degree of detail and specificity. Kibbe v. Lege, 604 So.2d 1366, 1372 (La.App. 3 Cir.) writ denied, 606 So.2d 541 (La.1992); Royal Const. Co. v. Sias, 496 So.2d 1301 (La.App. 3 Cir. 1986).
Upon review of the record, we agree with the trial court's determination that the Plaintiff was entitled to $24,286.30. The judge took into account the labor, materials, and supplies expended in the job by Love for which he did not receive payment. The Plaintiff presented evidence reflecting that $71,000.00 was due, subject to credits totaling $46,713.70, leaving a balance of $24,286.30. The trial judge acted within his discretion in determining that $24,286.30 was due based on quantum meruit. However, the trial judge committed an error of law when he deducted $10,000.00 from the award because the contract was for $104,400.00 instead of $114,400.00. In determining the award, the amount of the contract was not at issue. The Plaintiff's award is to be derived from the amount of work done and materials supplied when calculating awards based on quantum meruit, not on the value of the contract. The Plaintiff was not requesting recovery for the entire contract, but he was requesting payment for the work done. Hence, the $10,000.00 deduction was erroneously applied. As such, the Plaintiff's assignment of error is meritorious.

DEFENDANTS' ASSIGNMENTS OF ERROR NOS. 4 & 5
Finally, we discuss the Defendants' last two assignments of error together because they overlap. In their fourth assignment, the Defendants argue that the trial court erred in awarding amounts allegedly remaining due under the contract and for materials and tools on the job site in the amount of $22,246.65. This award was granted by the trial court for four completed projects. The award was broken down as follows: Notre Dame $18,319.32; Food Services Contract $1,365.00; Crowley Alternative School $1,893.25; and Ville Platte Housing $669.08. Then, in assignment number five, the Defendants assert that the trial judge erred in awarding Love money for the Notre Dame job in particular.
On appeal, the Defendants assert that the trial court erred in awarding Love $22,246.65 for the four other completed projects which Habetz refused to pay Love. In particular, he disputes the award *768 of $18,319.32 for the Notre Dame project. The record indicates that the Notre Dame project was done without a contract and that, instead, it was done on a cost plus basis. Love produced several detailed documents regarding the labor and materials for the project during the trial. He also testified regarding each aspect of the job including how the charges were derived. Habetz also testified in regards to the Notre Dame project. He testified that the charges were excessive, but he offered little evidence to contradict Love's testimony. He testified as to his recollection based on photographs.
During his ruling, the judge indicated reasons for awarding $22,246.65 to Love for the projects. They were the following. First, the Defendants produced very little opposition or evidence regarding the Ville Platte Housing job, the Crowley Alternative School job, or the Crowley Food Services job. Second, for the Notre Dame job, he evaluated the testimony of the Love and Habetz and the evidence produced by both sides and made a credibility determination. In fact, in his Reasons for Judgment, he stated that he found Love to be more credible. We recognize that the trial court is afforded great discretion where conflict exists in testimony in making reasonable evaluations of credibility of the witness and reasonable inferences based on the evidence. Leal v. Dubois, 00-1285 (La.10/13/00); 769 So.2d 1182. In light of the record, we find that the trial judge acted within his discretion in awarding Love money for these projects. The Defendants' assignment of error is without merit.
On appeal, the Defendants request that we reverse the award of $3,000.00 awarded to Love for tools and equipment confiscated by Habetz at Crowley High School in their fourth assignment. They argue that, according to the terms of the contract, the general contractor is entitled to the tools and equipment left on the job. The contract provided that, upon termination by default, the contractor was able to take into possession the subcontractor's materials, tools, and equipment. They argue that the trial court erred when it failed to apply this provision of the contract.
In light of the record, we do not find that the trial court erred when it awarded $3,000.00 for the tools for the following reasons. First, Love did not default on the Crowley project. Instead, the trial judge ruled that Habetz owed Love money for the project and Habetz was not owed any money on this project which would warrant the taking of the tools. Second, during the trial, Love produced evidence that it would cost $6,811.00 to replace the tools. The trial judge awarded $3,000.00 for the depreciated value of the tools. We find this amount to be reasonable; hence, we affirm the award for the tools by the trial court.

DECREE
For the above reasons, the judgment of the trial court is affirmed in part, amended in part, and reversed in part. We affirm the following awards: $3,000.00 for the tools; $18,319.32 for the Notre Dame School; $1,365.00 for the Crowley Food Services contract; $1893.25 for the Crowley Alternative School; and $669.08 for the Ville Platte Housing project. We reverse the trial court's rulings that Love is entitled to $250.00 for working on the L trims at the Eunice Nursing home and that a $10,000.00 offset should be applied to the Crowley High School project award. Finally, we amend the judgment to reflect a decrease in the amount awarded to Love on the Eunice Nursing Home Project from $49,208.47 to $48,958.47 and to reflect an increase in the amount awarded to Love for the Crowley High School project from *769 $14,286.30 to $24,286.30. All cost of this appeal are assigned to the Defendants.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART.