STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-774

PETER JOSEPH WHITBECK D/B/A WHITBECK ADVERTISING, INC.

VERSUS

KATHY KAY

**********

APPEAL FROM THE
LAKE CHARLES CITY COURT
PARISH OF CALCASIEU, NO. 04-1137
HONORABLE JOHN S. HOOD, CITY COURT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Kathleen Kay
Post Office Box 2042
Lake Charles, LA   70602-2042
(337) 439-7616
COUNSEL FOR DEFENDANT/APPELLANT:
    Kathleen Kay

Gregory Joseph Spicer
2901 Hodges Street, Suite A
Lake Charles, LA   70601
(337) 436-1463
COUNSEL FOR PLAINTIFF/APPELLEE:
    Peter Joseph Whitbeck
    Whitbeck Advertising, Inc.

AMY, Judge.

In this contract dispute, the plaintiff was to provide consultation and advertising services to the defendant, a political candidate. The plaintiff brought this suit to recover unpaid consultation fees. The trial court awarded the plaintiff $2,769.61 under the contract and dismissed the defendant's reconventional demand. The defendant appeals, arguing that the trial court erred in denying the reconventional demand, finding that payment was due under the contract, failing to order the plaintiff to return payments that were previously made, and assigning the defendant with costs. For the following reasons, we affirm.

### Factual and Procedural Background

On April 11, 2003, Kathleen Kay entered into a contract with Peter Joseph "Joe" Whitbeck, owner of Whitbeck Advertising, Inc., to consult on her campaign for Calcasieu Parish Clerk of Court and to purchase general media on her behalf. A review of the contract shows, in part, the terms as follows:

> **Kathleen Kay,** candidate for clerk of court, agrees to allow Joe Whitbeck (political communications consultant) and Whitbeck Advertising, Inc. **(WAI - Agency)** to consult and purchase general media on his behalf starting **April 3, 2003.** This agreement expires at the end of the voting period for this particular race. Mrs. Kay assumes liability for payment of any and all charges we have duly approved. Mrs. Kay agrees to allow Whitbeck Advertising, Inc. to purchase all media, public relations, and marketing needs and provide creativity for those projects . . . .
>
> **The services that Joe Whitbeck and Whitbeck Advertising, Inc. and staff will provide are summarized as follows:**
>
> 1. Assist in developing communications plans and budget estimates based on the marketing objectives and political strategies of Mrs. Kay.
>
> 2. Provide all creative, production preparation and media services to develop advertisements, commercials, media/advertising plans, brochures and other projects as required by the plan and as associated with the approved advertising budget for Mrs. Kay. Arrange photography, printing, display construction, publicity,

etc., as needed. Carry through production in all aspects to completion.

3. Provide continuous, as needed, account service and consultation to ensure prompt completion of projects.

4. Provide public relations counsel and maintain on-going publicity projects in accordance with the plan.

5. Maintain internal procedures that ensure budget control, prompt billing and quality control.

6. Attend weekly strategy meetings with Mrs. Kay and election team.

In exchange for his services, Ms. Kay was to pay Mr. Whitbeck a $10,000.00 consulting fee. A review of the contract shows that a $2,000.00 retaining deposit was required and the remainder of the balance, $8,000.00, was to be paid in $2,000.00 monthly increments. The contract required that the fee be paid on the first of every month prior to the vote date, which was October 4, 2003. All media expenses were to be paid in full prior to execution.

Ms. Kay asserts that she became dissatisfied with Mr. Whitbeck's performance and communication during the course of her campaign. Ms. Kay testified that Mr. Whitbeck only attended the weekly strategy meetings held during the beginning stages of her campaign. According to Ms. Kay, Mr. Whitbeck did not attend the forums in which she participated. Ms. Kay also testified that Mr. Whitbeck did not help her air a commercial that she was able to produce using her own resources.

Ms. Kay's bid for clerk of court was unsuccessful. Although the contract stated that Ms. Kay was to pay Mr. Whitbeck $2,000.00 per month for consultation services, she began withholding payment in order to review invoices for media items ordered on her behalf. Ms. Kay further explained that: "I felt as though also that they had made, if my suspicions were correct, that they had made plenty of money, over and

2

above what they charged me for the items that were sold to me, and that would have been contrary to our agreement." After examining the invoices, Ms. Kay determined that "they made an additional five thousand, four hundred and nine dollars and eighty-two cents ($5,409.82) just in marking up the items that were sold to me."

Mr. Whitbeck instituted this suit to recover $5,769.61 in unpaid consultation fees and finance charges. Ms. Kay thereafter filed a reconventional demand, asserting that Mr. Whitbeck breached the contract by not performing the services required of him and by overcharging her for the media items that were purchased. The trial court awarded Mr. Whitbeck $2,769.61, finding that he was not entitled to full payment under the contract due to failure to adequately perform during the final six weeks of the campaign. The trial court dismissed Ms. Kay's reconventional demand.

Ms. Kay brought this appeal, specifying the following as error in her brief to this court:

A. After making a clear finding that Whitbeck breached his contract, the trial court concluded that the reconventional demand was denied. The claim for reconventional demand was breach of contract.

B. Upon a finding of breach of contract, the court should have determined that none of the price of the contract ($10,000) was due unless Whitbeck claimed and proved some entitlement to some payment under the theory of *quantum meruit*.

C. The court erred in failing to order Whitbeck to return the portion of the $10,000 contract payment that was made.

D. The court erred in casting Kay with costs.

**Discussion**

*Recovery of Unpaid Sums*

Ms. Kay first questions the trial court's dismissal of her reconventional demand in light of the award of additional sums to Mr. Whitbeck. She contends that the trial

court implicitly found that she proved that Mr. Whitbeck breached the contract. Ms. Kay questions the trial court's dismissal of her reconventional demand in light of the award, which was less than the amount Mr. Whitbeck was due.

As can be seen in its reasons for ruling, the trial court found that Mr. Whitbeck was able to satisfy his burden of proof with regard to part of the contract's term, but that he did not prove that he was entitled to recovery of the full sum due under the contract. In ruling, the trial court explained that:

> I do find a tremendous lack of communication in this contract by Mr. Whitbeck . . . Consultation means professional advice . . . Mr. Whitbeck, I don't know how you could have advised Ms. Kay correctly without attending forums and these meetings. These meetings are in your contract. (Reading) Number 6, attend weekly strategy meetings with Ms. Kay and election team. You did not do so. Now, some of these were canceled I understand but I'm looking at exhibit D-14 and there is an expression at that time of missed meetings, lack of communication, the whole tenner [sic] of this e-mail is lack of communication, and there's so much more to a political consultant. You didn't hold her hand. Nothing that I have heard from either side in this were - - that you weren't there when she needed you in the last couple of months of this campaign. *Now, specifically I get to the TV shoot on August 16[th]. That, to me, is kind of where the wheels fell off on this contract.*

> I am struck again with the lack of communication as to when y'all walked into that conference room nobody really knew what the other person had in mind or what they intended, from what was presented to me in court. Maybe y'all had a much better idea but I've got to rule on what was presented to me in court and *after that time* there were - - I call it lack of communication between Ms. Kay, between her production guy who was in another state, but that's no excuse in this day and time with e-mails and overnight deliveries and faxes and computers . . . .

> Mr. Whitbeck, I feel that you have not performed, to me, what was the object of this contract during the last six (6) weeks of this campaign. I'm going to reduce what you have prayed for in this petition by the amount of three thousand dollars ($3,000.00). The rate is two thousand dollars ($2,000.00) per month. I'm saying six (6) weeks is my finding. Beyond that I really don't have anything really to hang my hat on. So it will be judgment for plaintiff in the amount of two thousand, seven hundred and sixty-nine dollars and sixty-one cents ($2,769.61). The reconventional demand, anything on the reconventional demand is denied.

(Emphasis added.)

The record supports the above determination that Mr. Whitbeck proved entitlement to recovery under the contract, save the final six weeks of the contract's term.[1] It is incorrect to assert that the trial court's finding in this regard required a granting of Ms. Kay's reconventional demand when she sought a determination that the *entirety* of the contract was breached. Rather, the ruling identifies a specific point in time from which Mr. Whitbeck's performance was found to be insufficient.

Furthermore, our review of the record reveals no manifest error in the trial court's factual findings regarding whether Mr. Whitbeck was entitled to a proportional recovery under the contract. Although Ms. Kay's testimony could be construed as a complaint of Mr. Whitbeck's attention throughout the campaign, the evidence presented most specifically related to the final weeks of the campaign. In fact, Ms. Kay referenced the mid-August time period that the trial court found to be the point at which performance under the contract ceased. She stated that:

> I can't tell you exactly at what point I became concerned that there were monies added on, but I will say that *from the middle of August*, from the time we shot that commercial, which, by the way, to my knowledge Joe Whitbeck never looked at - - never looked at the footage that was provided to him. I think I asked him that question one time and I got a really snotty e-mail back about that.

(Emphasis added.) In short, no evidence was presented so as to compel the trial court to conclude that Mr. Whitbeck failed to perform sufficiently under the contract during the initial weeks of the campaign. Thus, Ms. Kay's assertions that the trial court was necessarily required to find favor in her reconventional demand and that she was entitled to recover all of the sums previously paid is without merit.

*Quantum Meruit*

Ms. Kay next argues that in order for Mr. Whitbeck to partially recover, he would have to prove he is entitled to payment under the theory of *quantum meruit*.

---

[1] Mr. Whitbeck does not appeal that ruling.

In *Love v. E.L. Habetz Builders, Inc.*, 01-1625, p. 15 (La.App. 3 Cir. 6/26/02), 821 So.2d 756, 767, the court found that:

> Quantum meruit awards are not dependent on a contract, but, instead, such awards are derived in the absence of a contract. In *Brankline v. Capuano*, 94-1630, p. 6 (La.App. 3 Cir. 5/3/95); 656 So.2d 1, 5, we noted that an award of quantum meruit involves the following:
>
> > Quantum meruit is an equitable remedy founded upon the principle that no one who benefits from the labor or materials of another should be unjustly enriched at the other's expense. The doctrine operates in the absence of a specific contract to imply a promise on behalf of the person to whom the benefit is conferred *to pay a reasonable sum for the services or materials furnished*.

The trial court's reasons for ruling reveal that it determined that a valid contract existed between Ms. Kay and Mr. Whitbeck. Recovery was awarded pursuant to that contract. Accordingly, Ms. Kay's assertion regarding the necessity of pleading quantum meruit lacks merit.

*Court Costs*

Finally, Ms. Kay asserts that, even if Mr. Whitbeck is found to be entitled to some recovery, the trial court erred in assessing all court costs to her.

With regard to assessment of costs, La.Code Civ.P. art. 1920 provides:

> Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
>
> Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

An appellate court will not disturb a trial court's assessment of court costs absent an abuse of discretion. *Smith v. Kan. City S. Ry. Co.*, 02-1505 (La.App. 3 Cir. 5/28/03), 846 So.2d 980. Although Mr. Whitbeck recovered only a portion of the fees he sought, he prevailed on his claim for unpaid fees. Accordingly, the trial court did not abuse its discretion in assessing all costs against Ms. Kay.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed against the defendant, Kathleen Kay.

**AFFIRMED.**