# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 05-1121


**DANIEL A. STRACENER & ANNETTE STRACENER**

**VERSUS**

**BRIDGET MARIE STROTHER STRACENER JOUBERT**


************

**APPEAL FROM THE**
**THIRTY-SIXTH JUDICIAL DISTRICT COURT**
**PARISH OF BEAUREGARD, NO. C-2005-0052 "A"**
**HONORABLE STUART S. KAY, JR., DISTRICT JUDGE**

************

**JAMES T. GENOVESE**
**JUDGE**

************


Court composed of Sylvia R. Cooks, Billy H. Ezell, and James T. Genovese, Judges.


**AFFIRMED AS AMENDED.**


Todd H. Melton
P.O. Box 847
616 Kirby Street
Lake Charles, Louisiana 70601
**COUNSEL FOR DEFENDANT/APPELLANT**:
    Bridget Marie Strother Stracener Joubert

Martha Ann O'Neal
P.O. Box 1055
125 North Washington Street
DeRidder, Louisiana 70634
**COUNSEL FOR PLAINTIFFS/APPELLEES**:

Daniel A. Stracener & Annette Stracener

**GENOVESE, Judge.**

In this child visitation matter, the mother appeals the trial court's award of visitation privileges afforded the paternal grandparents. For the following reasons, we affirm as amended.

## FACTS

Bridget Marie Strother Stracener Joubert (mother) and Daniel Stracener (father) were married on October 5, 2002. On November 13, 2002, the mother filed for divorce.[1] The only child of the marriage, Chase Connor Stracener (Chase), was born on July 9, 2003, while the divorce proceedings were pending, but prior to their judgment of divorce. During their separation, the parties signed a memorandum of understanding through mediation on January 30, 2004, wherein they agreed to joint custody of the child with the mother being designated as the domiciliary parent and with the father having certain designated visitation rights. On February 2, 2004, a judgment of divorce was granted by the trial court, and the terms of the mediation agreement relating to custody and visitation were made a judgment of the court. On February 13, 2004, the trial court signed the final judgment.

The father, Daniel Stracener, was killed in a car accident on February 12, 2004, the day before the final judgment was signed.

On January 19, 2005, Plaintiffs, Daniel A. Stracener and Annette Stracener (grandparents), filed a Petition for Grandparents' Rights against the mother, seeking visitation with their paternal grandson, Chase. This matter was tried on February 17, 2005. The trial court rendered judgment granting visitation to the grandparents as

---

[1]The divorce suit was also filed in the Thirty-Sixth Judicial District Court entitled "Bridget Marie Strother v. Daniel Stracener" bearing docket number C-2002-1015 and was made a part of the present proceedings.

1

follows:

A. One weekend per month, being the first weekend of each month. That beginning for the first weekend of visitation only, beginning on March 4, 2005, the grandparents shall be allowed to pick the minor child up at 12:00 noon on Friday, March 4, 2005, continuing until 6:00 o'clock p.m. on Sunday, March 6, 2005. Thereafter, all visitation shall be from 6:00 o'clock p.m. on Friday to 6:00 o'clock p.m. on Sunday for the first weekend of each month;

B. Holidays:
   1. The grandparents shall have every Christmas Eve beginning at 12:00 o'clock noon until 6:00 o'clock p.m.;
   2. The paternal grandparents and the mother shall alternate Thanksgiving Day allowing the grandparents in even numbered years to have the minor child beginning at 6:00 o'clock p.m. on the Wednesday preceding Thanksgiving day until 6:00 o'clock p.m. on the Friday following Thanksgiving; in odd number of years, the grandparents shall be granted from 6:00 o'clock p.m. on Tuesday preceding Thanksgiving day until 6:00 o'clock p.m. on the Wednesday preceding Thanksgiving day.
   3. The holidays of Easter Sunday, Memorial Day, Fourth of July, New Year's Day, and Labor Day shall alternate granting the paternal grandparents from 6:00 o'clock p.m. the day preceding the holiday through and until 6:00 o'clock p.m. on the holiday. Beginning with the Easter Sunday 2005 being granted to the mother, and then will alternate.

C. The paternal grandparents shall enjoy time with CHASE CONNER STRACENER on the day preceding his birthday beginning at 12:00 o'clock noon and ending at 6:00 o'clock p.m. on that day. That when the minor child begins school, and this day falls on a school day, than [sic] the period of visitation shall begin from the time immediately after school is let out until 6:00 o'clock p.m. If the birthday is on a weekend or non-school day, regardless of the fact if the child is school age, the visitation shall be from 12:00 o'clock noon until 6:00 o'clock p.m.;

D. The paternal grandparents shall be granted visitation on October 27th of each year, which is the minor child's father's birth date beginning at 12:00 o'clock noon and continuing until 6:00 o'clock p.m. on that date. After the minor child begins school, and if said date falls on a school date, then visitation shall not interfere with school and therefore shall begin immediately after school lets out until 6:00 o'clock p.m. If the birthday is on a weekend or non-school day, regardless of the fact if the child is school age, the visitation shall be from 12:00 o'clock noon until 6:00 o'clock p.m.;

2

E. The paternal grandparents shall be granted telephone contact on a weekly basis between the grandparent(s) and the minor child on Saturday of each weekend between the hours of 7:00 o'clock p.m. to 8:00 o'clock p.m.;

F. Summer: In addition to the other holidays stated herein the grandparents shall be granted one full week each summer beginning on Friday at 6:00 o'clock p.m. and continuing though [sic] the following Friday at 6:00 o'clock p.m. Written notice shall be given to the mother by May 1st of each year as to which week the grandparents wish to exercise this vacation. Under no circumstances may this one week block be exercised until after one complete week has passed after school has ended and no later than one complete week prior to school beginning in the Fall.[sic];

G. That in the event that the grandparents decide to exercise their visitation outside of the immediate area, especially if they intend to travel out of state or to a neighboring city, they shall give notice to the mother and provide a manner in which the child can be contacted by phone;

H. The grandparents will make all transportation arrangements to exercise this visitation.

The mother appeals.

## ISSUES

The following issues are presented by Joubert for our review:

1. Whether the trial court abused its discretion in the amount of visitation awarded the grandparents and in failing to place special weight on the mother's visitation preference who was not proven to be or challenged as an unfit parent.

2. Whether the trial court erred in applying La.R.S. 9:344 and in failing to apply and address the provisions of Civ.Code art. 136.

## LAW AND ARGUMENT

**Louisiana Revised Statutes 9:344**

The mother asserts that the trial court committed legal error by applying La.R.S. 9:344 to the facts of this case. The mother contends that since she and the father were already divorced when the father died, La.R.S. 9:344 is inapplicable. She concludes that the law to be applied is La.Civ.Code art. 136 and the provisions

3

contained therein.  We agree.

Louisiana Revised Statutes 9:344 provides as follows:

§ 344. Visitation rights of grandparents and siblings

A. If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

B. When the parents of a minor child or children live in concubinage and one of the parents dies, or is incarcerated, the parents of the deceased or incarcerated party may have reasonable visitation rights to the child or children during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

C. If one of the parties to a marriage dies or is incarcerated, the siblings of a minor child or children of the marriage may have reasonable visitation rights to such child or children during their minority if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

D. If the parents of a minor child or children of the marriage are legally separated or living apart for a period of six months, the grandparents or siblings of the child or children may have reasonable visitation rights to the child or children during their minority, if the court in its discretion find that such visitation rights would be in the best interest of the child or children.

By its express terms, La.R.S. 9:344 provides for grandparent visitation in limited circumstances, including when a parent is deceased, if the deceased parent is "one of the parties to a marriage."  In other words, the death of the parent must occur while he or she is married.  These are not the facts in the case at bar.  The mother and the father were divorced on February 2, 2004.  The father died on February 12, 2004. The fact that the judgment of divorce was not signed by the trial court until the day following his death is of no consequence.  Accordingly, La.R.S. 9:344 is inapplicable,

4

and the trial court committed legal error relying on that statute.

**Standard of Review**

This court in *Love v. E.L. Habetz Builders, Inc.*, 01-1675, p. 3-4 (La.App. 3 Cir. 6/26/02), 821 So.2d 756, 760-761 (citations omitted), explained the standard of review to be applied by an appellate court as follows:

> It is well settled in Louisiana that findings of fact of the trial court will not be disturbed on appeal unless they are manifestly erroneous or clearly wrong. As long as the findings of the trial court are reasonable in light of the record, the appellate court may not reverse even if it would have weighed the evidence differently as a trier of fact.
>
> On the other hand, when reviewing a question of law, the appellate court must simply decide whether the trial court was legally correct or incorrect. "If the trial court's decision was based on its erroneous application of law, rather that [sic] on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court." In fact, the appellate court must conduct a *de novo* review of the entire record when it finds a reversible error of law or manifest error.

Having concluded that the trial court committed legal error in the present case by applying La.R.S. 9:344, this court has conducted a *de novo* review of the record.

**Louisiana Civil Code Article 136**

Based on the facts in the record, the law to be applied in this case is La.Civ.Code art. 136, which provides as follows:

> Art. 136. Award of visitation rights
>
> A. A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.
>
> B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:

5

(1) The length and quality of the prior relationship between the child and the relative.

(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.

(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.

(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.

(5) The mental and physical health of the child and the relative.

C. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article.

This court first notes that paragraph B of article 136 requires a threshold showing of "extraordinary circumstances." In the instant case, the parties do not dispute that the death of the father is an "extraordinary circumstance" thereby triggering the provisions of the article. In fact, this court has found the death of a parent to be an "extraordinary circumstance." *Ray v. Ray*, 94-1478 (La.App. 3 Cir. 5/3/95), 657 So.2d 171. Additionally, we note that the mother makes it clear in her brief to this court that "complete denial of visitation altogether . . . is not before this Court as JOUBERT still does not object to the STRACENERS having visitation with the child at issue, she simply objects to the amount of such so awarded." We also note that the mother takes particular exception to the trial court's award of overnight visitation with the grandparents. However, it should also be noted that before the breakdown of the relationship between the mother and the grandparents, the mother in fact personally allowed Chase to spend the night with his paternal grandparents. Thus, we do not find her present opposition to overnight visitation to be justified. These factors considered, there is no issue as to whether visitation with the grandparents is in "the best interest of the child." With that being the case, there is

6

no need to consider the five factors enumerated in La.Civ.Code art. 136. Accordingly, the narrow question before us is whether the grandparent visitation granted by the trial court was "reasonable visitation."

The term "reasonable visitation" is not defined. However, as we noted in *Ray v. Ray*, 657 So.2d at 173, "[t]hrough [La.Civ.Code art. 136], the law provides a means of maintaining family relationships where they might otherwise be lost to the child." In this case, La.Civ.Code art. 136 serves to ensure that Chase maintains contact with the parents of his deceased father.

The record of the divorce proceedings between the father and mother were made a part of the present proceedings. Therefore, this court was able to review the custody and visitation plan originally agreed to by the mother and the father prior to the father's death, which plan was incorporated into the judgment of February 13, 2004. Notably, the visitation afforded the child's father was less than the grandparent visitation granted by the trial court. Considering the tender age of the child, and the facts in the record of this case, we do not find such extensive grandparent visitation to be reasonable. This is especially true considering the recent jurisprudence underlining "the interest of parents in the care, custody, and control of their children," as explained in *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054 (2000), and its progeny.

In recognizing this paramount right of a parent, we quote approvingly from *Wood v. Wood*, 02-0860, p. 8 (La.App. 1 Cir. 9/27/02), 835 So.2d 568, 573*, writ denied*, 02-2514 (La. 2/28/03), 840 So.2d 565, wherein the first circuit, considering visitation of a nonparent, and discussing *Troxel*, expressly recognized "a fit parent's constitutionally protected fundamental right of privacy in child rearing," and opined

7

that a trial judge must "remember that any rights of nonparents are ancillary to that of a fit parent." The appellate court cautioned that "the trial court must be aware that as nonparent visitation increases, the infringement and burden on the parent's fundamental right of privacy in child rearing increases proportionally" and that "[v]isitation that unduly burdens parental rights would be unconstitutional, regardless of the provisions of statutory law." *Id.* at 573 (citing *Reinhardt v. Reinhardt*, 97-1889, p. 5 (La.App. 1 Cir. 9/25/98), 720 So.2d 78, 80, *writ denied*, 98-2697 (La.12/18/98), 734 So.2d 635, *cert. denied*, 526 U.S. 1114, 119 S.Ct. 1761 (1999).

Considering the foregoing, we affirm the judgment of the trial court granting grandparent visitation; however, we find said visitation to be excessive and award grandparent visitation as hereinafter set forth:

1.   During the year 2006, one weekend per month commencing the first Friday of the month from 5:00 p.m. Friday to 6:00 p.m. Saturday; also on the third weekend of every month on Saturday from 9:00 a.m. to 6:00 p.m.

2.   Commencing in the year 2007, one weekend per month commencing the first Friday of the month from 5:00 p.m. Friday to 6:00 p.m. Sunday; also on the third weekend of every month on Saturday from 9:00 a.m. to 6:00 p.m.

3.   On Christmas Eve from noon to 6:00 p.m.

4.   On the eve of the child's birthday from noon, or when school lets out during times that the child is in school, to 6:00 p.m.

5.   On the child's father's birthday from noon, or when school lets out during times that the child is in school, to 6:00 p.m.

6.   Telephone calls weekly on Saturday from 7:00 p.m. to 8:00 p.m.

7.   Summertime visitation shall be as follows:

   a. three days in 2006;
   b. five days in 2007;
   c. one week (seven days) in 2008 and thereafter each year.

8

Notice of the exercise of summertime visitation and the respective dates of said visitation shall be given by the grandparents to the mother no later than March 31st of each year.

8.   That in the event that the grandparents decide to exercise their visitation outside of the immediate area, especially if they intend to travel out of state or to a neighboring city, they shall give notice to the mother and provide a manner in which the child can be contacted by phone.

9.   The grandparents shall be responsible for transportation during the exercise of grandparent visitation.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed as amended as set forth above. Costs for this appeal are assessed to the grandparents.

**AFFIRMED AS AMENDED.**

9