STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1588


COLLEEN FONTENOT

VERSUS

ROSS GRANGER


************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2004-5070, DIV. "C"
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, John D. Saunders, Michael G. Sullivan, Elizabeth A. Pickett, and James T. Genovese, Judges.


REVERSED AND REMANDED.


Sullivan, J., dissents and would affirm, finding no manifest error given the facts of this case.


William J. Cutrera
Attorney at Law
910 Ford Street
Lake Charles, Louisiana 70601
(337) 433-1414
Counsel for Plaintiff/Appellant:
    Colleen Fontenot

**M. Steven Beverung**
**Book and Beverung**
**620 Esplanade Street, Suite 103**
**Lake Charles, Louisiana 70607-6363**
**(337) 478-8706**
**Counsel for Defendant/Appellee:**
**Ross Granger**

**GENOVESE, JUDGE.**

Plaintiff, Colleen Fontenot, appeals a judgment granting a motion for involuntary dismissal orally made by the defendant, Ross Granger, her former son-in-law, after her presentation of evidence at the trial of her petition for grandparent visitation. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Ms. Fontenot is the maternal grandmother of Caitlin, Catherine, Marcus, and Evan Granger, minor children born of the marriage between Mr. Granger and Ms. Fontenot's daughter, Marcella Colleen Granger. Mr. and Mrs. Granger were divorced in May of 2002. Mr. Granger had previously been granted sole custody of the children pursuant to a stipulation. Ms. Fontenot had been in favor of Mr. Granger having sole custody, believing that the arrangement was in the best interest of the children.[1] On July 26, 2002, the mother, Marcella Colleen Granger, committed suicide.

Ms. Fontenot filed a petition for *ex parte* temporary custody of her four grandchildren on September 3, 2004, alleging that the father, Mr. Granger, was not properly caring for them. She alleged, among other things, that the Granger household was filthy, with trash and rotting food strewn throughout, that the children were not being properly fed, that the children had been suffering from repeated lice infestations, and that Mr. Granger had been abusing alcohol in the children's presence. Temporary custody was awarded to Ms. Fontenot. Mr. Granger filed an answer denying the allegations and a reconventional demand seeking to have Ms. Fontenot sanctioned pursuant to La.Code Civ.P. art. 863 for her filing of the petition.

---

[1]According to an affidavit signed by Ms. Fontenot that was attached to Ms. Granger's Petition for Divorce, Marcella was a drug addict and unable to care for the needs of her children.

1

Mr. Granger also requested that a preliminary injunction be issued prohibiting Ms. Fontenot from having contact with her grandchildren. At the fifteen-day hearing, Ms. Fontenot agreed to rescind the temporary custody order because she was satisfied that Mr. Granger had remedied the environment and conditions for which the *ex parte* petition had been filed.

On March 30, 2005, Ms. Fontenot filed a petition for visitation with her four grandchildren in which, according to the "Suggested Joint Custody Plan" attached thereto, she sought joint custody of her grandchildren with Mr. Granger. Trial of the matter was continued several times, in part due to Hurricane Rita. In conjunction with an agreement reached between Ms. Fontenot and Mr. Granger, an order was entered on October 24, 2006, appointing Dr. Patricia Post to evaluate Ms. Fontenot with respect to her ability to appreciate and honor appropriate boundaries with respect to any role that she might be given by the court in the lives of her grandchildren. The matter was eventually tried on February 15, 2007.[2] At the close of Ms. Fontenot's case, Mr. Granger moved for a judgment of involuntary dismissal, pursuant to La.Code Civ.P. art. 1672(B), which the trial court granted. A written judgment was signed on September 4, 2007. Ms. Fontenot now appeals, raising in her sole assignment of error "[w]hether the death of a parent constitutes an extraordinary circumstance[, as] contemplated in La.Civ.Code art. 136[,] thereby allowing further consideration of a grandparent's request to visit [her] grandchildren."

---

[2]Mr. Granger's previously filed request for sanctions was also tried on this date. The trial court took the issue of sanctions under advisement. By judgment dated September 4, 2007, the request for sanctions was denied.

# LAW AND DISCUSSION

The legal authority for non-parent visitation is found in La.Civ.Code art. 136[3] and La.R.S. 9:344(A).[4] Louisiana Revised Statutes 9:344(A) is inapplicable to the case at bar because it only applies to grandparent visitation if "one of the parties to the marriage dies, is interdicted, or incarcerated. . . ." Such is not the case in the instant matter because Mr. and Mrs. Granger were divorced in May of 2002; hence, there was no marriage in place at the time of Ms. Granger's death in July of 2002. Therefore, we must turn to La.Civ.Code art. 136.

Louisiana Civil Code Article 136 provides for grandparent visitation if there

---

[3]Louisiana Civil Code Article 136 provides, in pertinent part, as follows:

B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:

(1) The length and quality of the prior relationship between the child and the relative.

(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.

(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.

(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.

(5) The mental and physical health of the child and the relative.

C. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article.

[4]Louisiana Revised Statutes 9:344(A) provides as follows:

A. If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

3

are extraordinary circumstances and the court finds that it is in the best interest of the child. This article sets forth a two-prong test in determining whether a grandparent is entitled to visitation: (1) there must be extraordinary circumstances; and (2) said visitation must be in the best interest of the child. Louisiana Civil Code Article 136 also enumerates the factors for the court to consider when making its determination as to the best interest of the child.

In order for a non-parent to be awarded visitation, the petitioner must make a threshold showing that extraordinary circumstances exist. La.Civ.Code art. 136; *Stracener v. Joubert*, 05-1121 (La.App. 3 Cir. 3/1/06), 924 So.2d 430. In *State ex. rel. Satchfield v. Guillot*, 02-150 (La.App. 3 Cir. 6/26/02), 820 So.2d 1255, a panel of this court held that all matters involving non-parental visitation requests must now be considered in light of the United States Supreme Court decision in *Troxel v. Granville*, 530 U.S. 57, 147 L.Ed.2d 49 (2000).

In *Troxel*, the United States Supreme Court rejected any visitation scheme that trampled upon the sacred and paramount rights of a fit parent to dictate the best interests of his or her children. However, the pertinent facts and applicable law in *Troxel* are readily distinguishable from the case at bar.

In the instant matter, Mr. Granger moved for an involuntary dismissal at the close of Ms. Fontenot's case in chief at the trial of her petition for visitation. The procedure governing motions for involuntary dismissal is found in La.Code Civ.P. art. 1672(B) which provides as follows:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the

plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

In ruling on the motion for involuntary dismissal, the trial court relied heavily on *Troxel* and post-*Troxel* third circuit jurisprudence. Because Ms. Fontenot had not presented any evidence to prove that Mr. Granger was not a fit parent or that he did not adequately care for his children, the trial court granted Mr. Granger's motion for involuntary dismissal. While the trial court noted that Ms. Fontenot appeared to be genuinely interested in being a part of her grandchildren's lives, it stated that it was compelled to follow the mandate set forth by the Supreme Court in *Troxel*. Despite its ruling, the trial court did discuss some of the La.Civ.Code art. 136 factors. It made specific reference to the affidavit signed by Ms. Fontenot, wherein she stated that it would be in the children's best interest to be in their father's custody. With respect to the fourth factor under La.Civ.Code art. 136(B), i.e., the willingness of the relative to encourage a close relationship between the child and his parent or parents, the trial court stated that it could not ignore the fact that Ms. Fontenot had previously filed the *ex parte* request for temporary custody against the children's father. It is noteworthy that Ms. Fontenot's affidavit and request for custody, upon which the trial court relied, had been filed in the record of these proceedings several years before the trial of this matter.

Ms. Fontenot contends that the trial court erred in interpreting *Troxel* to require that she prove that Mr. Granger was unfit before it considered the factors found in La.Civ.Code art. 136(B). She submits that the death of the children's mother, her daughter, constituted "extraordinary circumstances" triggering the provisions of La.Civ.Code art. 136(B) and that the cases relied upon by the trial court are distinguishable from this matter because both of the children's biological parents

5

were alive at the time of the proceedings. She further contends that the trial court's involuntary dismissal of her petition for visitation should be reversed so that a trial can take place to determine whether visitation with her would be in the best interest of her grandchildren. We agree.

In *Ray v. Ray*, 94-1478 (La.App. 3 Cir. 5/3/95), 657 So.2d 171, the mother of a minor child argued on appeal that the death of her husband after their divorce was not an "extraordinary circumstance" justifying the trial court's grant of visitation to the child's paternal great-grandfather and aunt. This court disagreed, reasoning as follows:

> In reviewing this matter, this court has found no jurisprudence defining the term "extraordinary circumstances" as used in La.Civ.Code art. 136. However, after reviewing the record in this matter, we conclude that the trial judge correctly decided that extraordinary circumstances exist here. **The child's father is dead**. There is no paternal grandfather who would have a right to visitation under La.R.S. 9:344. As a result, the natural conduits through which the great-grandfather and aunt might develop a relationship with Casey are missing. We believe that it is to remedy such situations that La.Civ.Code art. 136 was enacted. Through this article, the law provides a means of maintaining family relationships where they might otherwise be lost to the child. Therefore, the trial court correctly found extraordinary circumstances in this case.

*Id.* at 173 (emphasis added). We find *Ray* to be applicable to the case at bar.

Although no two factual scenarios are exactly the same, in the instant matter, as in *Ray*, non-parent visitation is being sought following the death of a parent. In both cases, La.Civ.Code art. 136 applies; thus, the non-parent must meet the threshold showing of the existence of "extraordinary circumstances." Additionally, the remedy provided by La.Civ.Code art. 136, which we recognized in *Ray,* of "maintaining family relationships where they might otherwise be lost to the child[,]" is wholly applicable in the matter presently before the court.

6

We are also mindful of the more recent decision of this court in *Stracener*, 924 So.2d 430, which also involved the application of La.Civ.Code art. 136. In *Stracener*, "the parties [did] not dispute that the death of the father [was] an extraordinary circumstance thereby triggering the provisions of the article." *Id*. at 435. After noting same in *Stracener*, we stated: "In fact, this court has found the death of a parent to be an 'extraordinary circumstance.'" *Id*. (citing *Ray*, 657 So.2d 171). Additionally, we find it relevant that the companion statute, La.R.S. 9:344, provides for reasonable visitation rights of a non-parent upon the death of a parent. Although La.R.S. 9:344 applies only "[i]f one of the parties to a marriage dies, is interdicted, or incarcerated," we can find no legal justification for reaching a different result when applying La.Civ.Code art. 136. Considering the facts in this case, and for the reasons set forth above, we hold that the death of the mother of these minor children is an "extraordinary circumstance" as contemplated by La.Civ.Code art. 136.

We will now address the standard of review applicable in this case.

The trial court's grant of an involuntary dismissal is subject to the well-settled manifest error standard of review. *[Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271]. Accordingly, in order to reverse the trial court's grant of an involuntary dismissal [in this case], we must find, after reviewing the record, that there is no factual basis for its finding or that the finding is clearly wrong or manifestly erroneous. *See Stobart. v. State, through DOTD*, 617 So.2d 880 (La.1993).

*Gauthier v. City of New Iberia*, 06-341, p. 3 (La.App. 3 Cir. 9/27/06), 940 So.2d 915, 918.

In the case at bar, the only evidence upon which the trial court could make a determination as to the threshold issue of extraordinary circumstances, *vel non*, was the evidence of the mother's death presented by Ms. Fontentot, the maternal grandmother. There being no other evidence presented on the issue, we certainly

7

cannot say that the death of the mother of these children does not meet the threshold of an extraordinary circumstance. Without any evidence to the contrary, it would indeed be extraordinary for these minor children to have to go through life without the benefit of their mother, their maternal grandmother, or potentially anyone on that side of the family. The facts in this case do not present a *Troxel* issue, or an attempt to thwart or hamper parental rights, but simply a request for grandparent visitation by the maternal grandmother of these minor children. The record in this case does not present a reasonable factual basis for the trial court's finding that the death of the mother of these minor children did not constitute an extraordinary circumstance. Consequently, considering the facts in this case, we find that the trial court's finding that the death of the mother of the minor children was not an extraordinary circumstance was clearly wrong and manifestly erroneous.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court granting an involuntary dismissal in this case and remand the matter to the trial court for a hearing pursuant to La.Civ.Code art. 136 to determine whether visitation with the maternal grandmother, Ms. Fontentot, would be in the best interest of her grandchildren and, if so, to establish a grandparent visitation plan. Mr. Granger is cast with all costs of this appeal.

**REVERSED AND REMANDED**.

8