# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**16-17**


SHAUNA MICHELLE BEEBE

VERSUS

SHAUN AARON DELCAMBRE


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 232,919
HONORABLE MONIQUE F. RAULS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## PHYLLIS M. KEATY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.


**AFFIRMED AS AMENDED.**

J. Ogden Middleton, II
J. Ogden Middleton, II, P.L.C.
1744 White Street
Alexandria, Louisiana 71301
(318) 443-4377
Counsel for Plaintiff/Appellant:
    Shaun Aaron Delcambre

R. Greg Fowler
3918 B Independence Drive
Alexandria, Louisiana 71303
(318) 487-9200
Counsel for Defendants/Appellees:
    Harlis Dean Beebe, Jr.
    Sharon Shaffer Beebe

**KEATY, Judge.**

Plaintiff/Appellant, Shaun Aaron Delcambre, appeals the trial court's judgment in favor of Defendants/Appellees, Harlis Dean Beebe, Jr. and Sharon Shaffer Beebe. For the following reasons, the trial court's judgment is affirmed as amended.

## FACTS & PROCEDURAL HISTORY

This non-parental child visitation matter regarding Alyssa Michelle Delcambre arose between her father, Shaun, and her maternal grandparents, the Beebes, following the death of her mother, Shauna Michelle Beebe, from a car accident on March 17, 2014. Shaun and the decedent were never married and were not living together at the time of her death. On March 21, 2014, the Beebes filed a petition seeking custody which was granted pursuant to the trial court's March 25, 2014 Order, subject to an April 14, 2014 custody hearing. A pretrial conference occurred on April 2, 2014, and thereafter Shaun's counsel filed in open court a Motion To Enroll, Motion To Vacate Improvidently Issued Custody Order and Petition For Immediate Custody of Minor Daughter Based Upon Mother's Death and Petition To Confirm Father's Natural Tutorship. The motion was rendered moot because both parties entered into a stipulated Consent Judgment in open court. The Consent Judgment was reduced to writing on July 2, 2014, after Shaun, his counsel, and the Beebes' counsel approved it as to form and content. The Consent Judgment was not appealed, and the Notice of the Signing of Judgment was mailed to all counsel on July 7, 2014.

Approximately one year later on June 23, 2015, Shaun filed a Rule To Modify Visitation. On August 20, 2015, the Beebes filed an Answer and Reconventional Demand, Rule To Amend and Correct Judgment, Rule To Specify

Visitation (hereinafter Rule to Specify Visitation). The matter proceeded to trial on August 31, 2015, wherein the trial court orally ruled in favor of the Beebes and against Shaun. In its Judgment On Rule dated October 9, 2015, the trial court granted the Beebes' Rule to Specify Visitation and denied Shaun's Rule To Modify Visitation. Counsel for both parties approved the Judgment On Rule as to form and content. The Clerk of Court mailed the Notice of the Signing of Judgment to all counsel on October 13, 2015. Shaun appealed the Judgment On Rule.

On appeal, Shaun asserts the following assignments of error:

1. The trial judge manifestly erred in ruling that this appellant did not show the requisite material change of circumstances since the April 2, 2014 Consent Judgment, granting the appellees motion to dismiss and thereafter modifying the terms of the Consent Judgment under the guise of "clarifying" its provisions and effectively granting these maternal grandparents more visitation time establishing the most extensive non-parent visitation schedule ever granted any grandparents in Louisiana.

2. The trial court manifestly erred in granting the unreasonable, excessive and unduly burdensome visitation rights to [A]ppellees under whatever statute she applied hereto, whether La.R.S. 9:344 or La.Civ.Code art. 136[.]

2. The trial court manifestly erred in failing to engage in the appropriate analysis of La.Civ.Code article 136' [sic] factors and entirely ignoring the tensions between the appellant parent and the non-parent appellees.

3. The trial court manifestly erred in failing to afford appropriate deference to appellant as a fit parent extended constitutionally guaranteed fundamental rights of privacy in child rearing.

4. The trial court manifestly erred in ordering that the parties share the transportation for [Alyssa]'s visitation with [A]ppellees[.]

5. The trial court manifestly erred in failing to make provisions for visitation of the [A]ppellees that fall on/near a holiday.

2

The standard of review utilized in this matter was discussed in *Evans v. Lungrin*, 97-541, 97-577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735, as follows:

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part*, *on other grounds*, 96-3028 (La.7/1/97); 696 So.2d 569, *reh'g denied*, 96-3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.*, 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha*, 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo*. *Lasha*, 625 So.2d at 1006.

## DISCUSSION

### I.   First Assignment of Error

In his first assignment of error, Shaun makes two arguments. First, he contends that the trial court manifestly erred in finding that he failed to show a material change of circumstances since the Consent Judgment. Second, he alleges that the trial court erred by modifying the Consent Judgment's terms under the guise of "clarifying" its provisions as it impermissibly gave the Beebes more visitation. This clarification, according to his brief, was a disguised appeal even though the Beebes' right to appeal had long elapsed.

In opposition, the Beebes deny that their rule was a disguised appeal. They contend that Shaun, and not them, is attempting to appeal the Consent Judgment

approximately one year after it became final by impermissibly seeking a trial court order limiting or extinguishing grandparent visitation as provided therein.

The Consent Judgment provided that Alyssa was to "stay with" the Beebes "until the end of the 2013-2014 school year ending on Thursday, May 22, 2013."[1] The Beebes were granted visitation every other week during the summer of 2014 with Shaun retaining custody at the end of the summer. Alyssa was to "live full time with" Shaun at the beginning of the 2014 school year, and the Beebes were granted visitation rights as follows:

> [E]very other weekend visitation . . . to begin at 6:00 o'clock p.m. on Friday August 15, 2014 (the first weekend following the first week of school) until 6:00 o'clock p.m. on Sunday, August 17, 2014.
>
> . . . the first Friday night . . . for the Thanksgiving holiday to begin at 6:00 o'clock p.m. on Friday until 6:00 o'clock p.m. on Saturday.
>
> . . . the first night . . . on the day the minor is let out for the Christmas holiday break to begin at 6:00 o'clock p.m. on the day school lets out until 6:00 o'clock p.m. the following day.
>
> . . . the December 30th night . . . from 6:00 o'clock p.m. until 6:00 o'clock p.m. on December 31st.
>
> . . . the first Friday night . . . for the Easter holiday to begin at 6:00 o'clock p.m. on Good Friday until 6:00 o'clock p.m. on Holy Saturday.
>
> . . . Mother's Day from from [sic] 9:00 a.m. until 5:00 p.m. . . .
>
> . . . in the summer blocks beginning in 2016 and thereafter, . . . a Summer vacation block . . . defined as [sic] one week block in June and a one week block in July conditioned upon it being requested in advance in a certified writing to the father forty five (45) days beforehand.

In his Rule To Modify Visitation, Shaun alleged that Alyssa's visitation with the Beebes was not in her "best interest" and that "this interaction need[ed] to

---

[1] Although the Consent Judgment indicates "May 22, 2013," we believe this should be "2014."

cease immediately." Shaun stated that the Consent Judgment did not grant him the right to spend Father's Day with Alyssa, including Father's Day 2015 as it took place during the Beebes' weekend.

The applicable burden of proof required in visitation matters such as this was discussed in *White v. Fetzer*, 97-1266, p. 5 (La.App. 3 Cir. 3/6/98), 707 So.2d 1377, 1380, *writ denied*, 98-931 (La. 5/15/98), 719 So.2d 466, as follows:

> [V]isitation is not strictly a "species of custody" and, instead, has an independent basis in the Civil Code. La.Civ.Code art. 136, Revision Comments 1993(b). A change in visitation rights is not as substantial as a change in actual physical custody. *Mosely v. Mosely*, 499 So.2d 106 (La.App. 1 Cir. 1986), *writ denied*, 505 So.2d 1138 (La.1987). In such cases, a showing that the change in visitation is in the best interest of the child is sufficient. *Bennett v. Bennett*, 95-152 (La.App. 3 Cir. 5/31/95); 657 So.2d 413.

Since Shaun was seeking to change visitation by modifying the Consent Judgment, he needed to only show that modification of the visitation schedule with the Beebes was in Alyssa's best interest. The trial court, however, legally erred by finding that Shaun needed to prove a material change in circumstances occurred since the Consent Judgment. This is evident in the trial court's oral ruling wherein it stated: "In this case, the party seeking to modify custody that's been established by a stipulated judgment has the burden of proving that there has been a material change in circumstances since the original custody decree was entered into." In the Judgment On Rule, the trial court also found that "it [was] in the best interest of the minor child[]" to deny Shaun's Rule To Modify Visitation for "a failure to prove a material change in circumstances[.]" We will, therefore, render judgment on the record by applying the correct law, i.e., best interest of the child, and determining the essential material facts de novo. *Evans*, 708 So.2d 731.

At trial, Shaun testified regarding incidents that occurred following execution of the Consent Judgment. Specifically, he stated that "Sharon Beebe had filed for Social Security for Alyssa on April 3rd, and that she was going to be the beneficiary unless [he] challenged it." He challenged it which resulted in Alyssa's benefits being switched into his name according to his testimony. Shaun noted that "Mrs. Beebe turned over a check [to him] that she had received from Social Security." Mrs. Beebe explained at trial on cross-examination that she was getting Alyssa's Social Security benefits started because "we still had custody of her." Mrs. Beebe stated that she returned the check to the "Social Security Office, with receipts for full amount[.]"

Shaun testified regarding two separate occasions wherein the Rapides Parish Sheriff's deputies visited his house. He stated that the first visit resulted after the police received an "anonymous phone call from someone saying that [he] was in the driveway beating up [his] girlfriend." Shaun indicated that after the police went to his house and talked to him and his girlfriend, they left and no charges were filed. Shaun testified that the second visit resulted after the police received information that massive drug use was occurring at his house. He stated that following their investigation, the police left and no charges were filed. When asked whether he believed these two incidents were related to the instant matter, Shaun replied: "[I]t seems odd." He admitted that he had no evidence connecting the Beebes to the complaints. The Beebes testified that they never called the police.

According to Shaun's testimony, the Department of Children and Family Services (DCFS) also visited Shaun's house based upon reports of child abuse and neglect. Shaun stated that the complaints were unfounded following an

6

investigation. He admitted that he had no evidence connecting the Beebes to the DCFS complaints. At trial, the Beebes denied being responsible for the complaints.

Shaun testified that he and his girlfriend received multiple anonymous text messages and phone calls alleging that he was a deadbeat dad, he needed to give Alyssa to her real parents, and he should "rot in hell." Shaun admitted that he did not know the identity of the person(s) responsible for the calls and texts. At trial, Mrs. Beebe testified that when Shaun confronted her about the messages, her response was "that doesn't make any sense to me[.]" Mrs. Beebe also testified that neither she nor her husband texted Shaun's girlfriend.

Shaun admitted that there was confusion regarding the Consent Judgment's interpretation of Father's Day, which occurred on a weekend in 2015 that was designated as the Beebes' weekend. He testified that he was upset because Alyssa failed to spend Father's Day with him. Shaun admitted that the Beebes gave him the opportunity to spend Father's Day with Alyssa in exchange for him giving them one other visitation day which was not specified in the Consent Judgment. He testified that he refused to trade a visitation day with them. At trial, the Beebes agreed that Shaun should be entitled to spend Father's Day with Alyssa. Specifically, Mrs. Beebe testified that Alyssa "should be with her father on certain holidays[.]" She further testified that "Yes, he did have a right to Father's Day, sir." The Beebes' sentiment is also shown through a text message they sent to Shaun dated June 20, 2015, which was admitted into evidence, and states: "Shaun, it was never our intent to keep Alyssa for father's day, what time would you like for us to have her at tunks in the morning?" In response, Shaun texted: "Everything further will be handled in court. I have nothing to say to you."

The trial court was also presented with evidence and testimony regarding Shaun's anger issues and previous arrests. He testified to pleading guilty in 2005 to simple battery and domestic violence regarding Nina Campbell. Shaun admitted to pleading guilty in 2009 to battery, domestic abuse, and false imprisonment regarding Shauna. The certified copies of the criminal cases which were admitted into evidence confirm his testimony and show that he was incarcerated in 2009 for eighteen months. Shaun's custodial and visitation rights were terminated during his incarceration pursuant to the trial court's March 31, 2010 Judgment, which provides:

> [A]t the completion of the incarceration of **SHAUN AARON DELCAMBRE** and at the completion of his anger management program that he has a right to petition the court for a change of custody and visitation of the minor child, **ALYSSA DELCAMBRE**, seeking what is in the best interest of the minor child.

After considering the above, the trial court referenced the Social Security issue in its oral ruling and stated: "[T]o me, that . . . is no reason for hostility. And the Court doesn't find that that . . . creates a material change of circumstances." Although the trial court incorrectly applied the wrong standard of review, we find that the trial court's following explanation supports a finding that Shaun failed to show that modification of visitation is in Alyssa's best interest:

> And I think that there may not be the best relationship between the parties, but I think the Beebes lost a daughter, and they simply want to have time with the granddaughter. That's reasonable. That's what any grandparent wold [sic] want, who has lost their child. They want to maintain that contact because the child is the link, that grandchild is the link to that child (sic). They may not have the best relationship, but I think they're civil.
>
> So, while the evidence that was presented, there may have been calls made to DCFS, but there's been no proof that the Beebes did it. While they could have done it, but it wasn't proven that they did do it.

8

> And as far as hostility, the evidence that's presented to this Court, the hostility appears to be with Mr. Delcambre. They send him a text, they're civil. His replies are very hostile. He's the one who . . . entered into a stipulated judgment, now I think he bargained -- he don't like what he bargained. He don't like what he got now that he's made this bargain, and now he wants to get out of it.
>
> . . . .
>
> As far as clarification, the judgment . . . I want him to have Father's Day. There was a failure there. It needs to be in there. Mother's Day is theirs. The clarification needs to be Friday, from 6:00 P.M. to Sunday from 6:00 P.M. They need to get advance notice if there has to be a change made, and they need to get an alternate weekend.

The foregoing clarification and its denial of Shaun's Rule To Modify Visitation was memorialized in the trial court's October 9, 2015 Judgment On Rule.

Based on the above, we find that Shaun failed to show that modification of the visitation schedule with the Beebes was in Alyssa's best interest. Accordingly, his assignment of error is without merit in this regard.

Shaun's second argument is that the trial court abused its discretion by allowing the Beebes to appeal the Consent Judgment since that right had elapsed, by modifying its terms under the guise of "clarifying" its provisions. This clarification, according to Shaun, impermissibly gave them more visitation.

In their Rule to Specify Visitation, the Beebes asked the trial court to "specify and define the weekend and holiday visitation they are allowed with the minor child so it keeps the confusion to a minimum from this point forward for the child's best interest and to make the Judgment as clear and precise as possible." They filed their rule, according to Mrs. Beebe's trial testimony, because they wanted "specific dates clarified, because we do not want to lose anything with our granddaughter." When asked whether she filed the rule in an attempt to gain more time with Alyssa, Mrs. Beebe responded: "No, sir. No, sir. We want the

stipulation clarified, so that the days that are in the stipulation, we actually get those days[.]" At trial, Shaun also sought clarification of the Consent Judgment by stating on cross-examination that he was "asking for the papers to be clarified as I understood they were written in the beginning, on April 2nd."

The trial court granted the Beebes' Rule to Specify Visitation with the subsequent Judgment On Rule stating:

> HARLIS and SHARON shall have visitation . . . every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. year round, and this visitation shall continue through the holidays; . . .
>
> . . . [O]n Father's Day weekend, SHAUN shall have the minor child yearly from Friday at 6:00 p.m. until Sunday 6:00 p.m.; . . .
>
> . . . [O]n Mother's Day weekend, HARLIS and SHARON shall have the minor child yearly from Friday at 6:00 p.m. until Sunday 6:00 p.m.; . . .
>
> . . . [F]or the summer visitation yearly, HARLIS and SHARON shall enjoy a one-week block with the minor child, in the month of June and July yearly, with forty-five (45) days' notice to SHAUN, and the parties shall try and not use their week block during these months to extend their every other weekend visitation granted herein; . . .
>
> . . . [T]he holidays provided in the July 2, 2014 Judgment regarding Christmas, Thanksgiving and Easter are in addition to the every other weekend visitation provisions awarded to SHARON and HARLIS; . . .
>
> . . . SHAUN shall provide a thirty (30) day advance notice to HARLIS and SHARON if any change to their weekend/holiday day visitation with the minor child needs to be modified, and HARLIS and SHARON shall get an alternate weekend/holiday day(s) as make up, except in the case of an actual emergency when reasonable notice shall be provided, and HARLIS and SHARON shall be allowed make up time with the minor child; . . .
>
>      . . . .
>
> . . . [E]xcept where explicitly changed herein, the Consent Judgment of May 2, 2014, shall remain in full force and effect[.]

Based on the above, we find that the trial court did not grant the Beebes a right to appeal, but instead clarified the Consent Judgment as follows: It gave

Shaun Father's Day weekend; it gave the Beebes a makeup weekend in the event Father's Day weekend fell on their weekend; and it specified and defined weekend and holiday visitation. The trial court, therefore, did not err, and Shaun's assignment of error is without merit in this regard.

Finally, the Beebes' counsel addresses Shaun's argument contained in his brief, arguing that the trial court impermissibly increased Mother's Day visitation in favor of the Beebes. The Consent Judgment grants the Beebes' visitation on "Mother's Day from from [sic] 9:00 a.m. until 5:00 p.m." although the Judgment On Rule increases visitation "from Friday at 6:00 p.m. until Sunday 6:00 p.m." The Beebes' counsel contends that even though the Judgment On Rule was approved by all counsel as to content and form prior to its submission to the trial court, the expansion of Mother's Day visitation may have been a misinterpretation of the trial court's ruling as stated in the transcript. The Beebes' counsel concedes that this was an oversight when preparing the Judgment On Rule and leaves this matter to our discretion.

After reviewing the trial court's transcript of the hearing on the Beebes' Rule to Specify Visitation, we agree that there was a misinterpretation of the trial court's ruling regarding the Mother's Day visitation. We, therefore, amend the Judgment On Rule to reflect that Mother's Day visitation will be as provided for in the Consent Judgment.

## II.    Remaining Assignments of Error

We will address Shaun's remaining assignments of error together because they focus on the issue of grandparent visitation as provided for in the Judgment On Rule. In that regard, Shaun contends that the trial court manifestly erred by: granting unreasonable, excessive, and unduly burdensome visitation rights under

11

La.R.S. 9:344 or La.Civ.Code art. 136; failing to engage in the appropriate analysis of La.Civ.Code art. 136 factors; failing to defer to his constitutionally guaranteed fundamental rights of privacy in child rearing; ordering the parties to share the transportation for Alyssa's grandparent visitation; and failing to make provisions for Alyssa's grandparent visitation days that fall on or near a holiday.

In support, Shaun cites two cases wherein this court found that the trial court's award of grandparent visitation was unreasonably excessive. In *Stracener v. Joubert*, 05-1121 (La.App. 3 Cir. 3/1/06), 924 So.2d 430, the mother and father were married, produced one child, and divorced. While separated, they agreed to joint custody with the mother being designated as the domiciliary parent subject to certain visitation rights in the father's favor. The trial court granted a divorce judgment, and the joint custody agreement was made the judgment of the court. After the divorce was granted but prior to the trial court's signing of the final judgment, the father died. The paternal grandparents filed a petition for grandparent visitation which was granted following trial. The mother appealed.

On appeal, the issues in *Stracener* were whether the trial court abused its discretion regarding the amount of grandparent visitation awarded and whether the trial court erred by applying La.R.S. 9:344 rather than La.Civ.Code art. 136. We found that La.R.S. 9:344 was not applicable since the mother and father were not married at the time of his death. We ruled that La.Civ.Code art. 136 was applicable and conducted a de novo review. Louisiana Civil Code Article 136(B) provides that under extraordinary circumstances, a blood relative "'may be granted reasonable visitation rights if the court finds that it is in the best interest of the child[,]'" and gives five factors to consider when determining the child's best interest. *Stracener* at 435. We agreed that a parent's death is an "'extraordinary

circumstance[]'" which triggers application of La.Civ.Code art. 136. *Id.* (quoting

*Ray v. Ray*, 94-178 (La.App. 3 Cir. 5/3/95), 657 So.2d 171). The mother in

*Stracener* did not object to grandparent visitation, but objected to the amount of

visitation time awarded, including overnight visitation. We found that her

opposition was unjustified since she allowed the child to sleep at the grandparents'

house prior to the breakdown of their relationship. In light of the foregoing, we

determined that grandparent visitation was in the child's best interest and therefore

declined to consider the five factors enumerated in La.Civ.Code art. 136(B).

We then narrowed the issue in *Stracener*, 924 So.2d at 435, as to whether

the trial court granted "reasonable visitation." We noted that "reasonable

visitation" was not defined although "'[t]hrough [La.Civ.Code art. 136], the law

provides a means of maintaining family relationships where they might otherwise

be lost to the child.'" *Id.* (quoting *Ray*, 657 So.2d at 173). We agreed that

La.Civ.Code art. 136 ensured that the child in *Stracener* maintained contact with

the grandparents. We reviewed the original joint custody plan executed between

the mother and the father, which was incorporated into the grandparents' visitation

schedule. We found that the trial court unreasonably gave the grandparents, rather

than the father, more time with the child and stated:

> Considering the tender age of the child, and the facts in the record of
> this case, we do not find such extensive grandparent visitation to be
> reasonable. This is especially true considering the recent
> jurisprudence underlining "the interest of parents in the care, custody,
> and control of their children," as explained in *Troxel v. Granville*, 530
> U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), and its progeny.
>
> In recognizing this paramount right of a parent, we quote
> approvingly from *Wood v. Wood*, 02-0860, p. 8 (La.App. 1 Cir.
> 9/27/02), 835 So.2d 568, 573, *writ denied*, 02-2514 (La.2/28/03), 840
> So.2d 565, wherein the first circuit, considering visitation of a
> nonparent, and discussing *Troxel*, expressly recognized "a fit parent's
> constitutionally protected fundamental right of privacy in child

13

rearing," and opined that a trial judge must "remember that any rights of nonparents are ancillary to that of a fit parent." The appellate court cautioned that "the trial court must be aware that as nonparent visitation increases, the infringement and burden on the parent's fundamental right of privacy in child rearing increases proportionally" and that "[v]isitation that unduly burdens parental rights would be unconstitutional, regardless of the provisions of statutory law." *Id.* at 573 (citing *Reinhardt v. Reinhardt*, 97-1889, p. 5 (La.App. 1 Cir. 9/25/98), 720 So.2d 78, 80,) *writ denied*, 98-2697 (La.12/18/98), 734 So.2d 635, *cert. denied*, 526 U.S. 1114, 119 S.Ct. 1761, 143 L.Ed.2d 792 (1999).

*Id*. at 436.

We affirmed the trial court's judgment awarding grandparent visitation in *Stracener*. We found, however, that the time allotted was excessive and amended same.

Shaun also cites *McMillin v. McMillin*, 08-502 (La.App. 3 Cir. 3/25/09), 6 So.3d 414, wherein the mother and father were married, produced one child, and divorced. Attached to their divorce decree was a joint custody order whereby the mother was granted primary physical custody subject to a visitation schedule in the father's favor. He subsequently filed a Rule for Contempt and Change in Physical Custody following difficulties he incurred regarding visitation. The father died while the rule was pending, and the paternal grandparents filed a motion to substitute as party plaintiffs. A Consent Judgment was thereafter signed by all parties establishing a grandparent visitation schedule. The grandparents thereafter filed a rule for contempt, and the mother filed an answer and cross rule. Following trial, the grandparents were awarded specified visitation rights, which the mother appealed.

On appeal in *McMillin*, we affirmed the trial court's finding that the Consent Judgment awarding grandparent visitation constituted extraordinary circumstances and that the facts and the testimony contained in the record established that it was

14

in the child's best interest. We then examined the trial court's grandparent visitation schedule for reasonableness and excessiveness and noted:

> The record in these proceedings indicates that Jennifer and the McMillins live approximately three hours apart from each other. Jennifer lives in Livingston, Louisiana; the McMillins live in Monterey, Louisiana. Jennifer is caring for three children. In addition to Emily, Jennifer and her new husband have an infant, and Jennifer has an eight-year-old child. Considering Jennifer's financial resources and time constraints, other visitation set aside for maternal grandparents and grandparents via adoption, compounded by the expense and three-hour travel time necessary to implement the present paternal grandparent visitation schedule of two weekends a month, we find the trial court's grandparent visitation schedule, in part, to be excessive, unreasonable, unduly burdensome, and manifestly erroneous.

*Id*. at 420. We amended the trial court's visitation schedule to reduce the amount of visitation time awarded to the grandparents.

We find that *Stracener* and *McMillin* are factually distinguishable from the instant matter and in turn fail to support Shaun's argument that the amount of grandparent visitation awarded to the Beebes was unreasonably excessive. Specifically, the children in *Stracener* and *McMillin* were two and three-years-old respectively; whereas, Alyssa was almost eight years old at the time of trial. The parties in *McMillin* were separated by a distance of approximately three hours; whereas, the Beebes live approximately ten to fifteen minutes away from Shaun. The children in *Stracener* and *McMillin* never lived with their grandparents; whereas, Alyssa lived with the Beebes during Shaun's incarceration. The parents in *Stracener* and *McMillin* were once married and bore the children at issue; whereas, Shaun and Shauna were never married.

Most importantly, *Stracener* and *McMillin* involved matters that were tried, judgment was rendered by the trial court granting grandparent visitation, and those judgments were timely appealed by the mothers. In this case, there was no trial

15

awarding the Beebes' visitation since Shaun voluntarily entered into a Consent Judgment with them. The Consent Judgment was not timely appealed and subsequently became final. Shaun, therefore, cannot challenge the alleged excessiveness of those rights granted by the Consent Judgment at this juncture since the Rule On Judgment, which is at issue in this appeal, merely specified certain parts of the Consent Judgment. Accordingly, the remainder of his assignments of error is without merit.

## DECREE

The trial court's judgment is affirmed. It is further amended to reflect that Mother's Day visitation will be as provided for in the Consent Judgment. All costs of this appeal are assessed to Plaintiff/Appellant, Shaun Aaron Delcambre, despite our amendment to the Judgment On Rule in his favor since his counsel approved it as to form and content prior to the trial court's execution of same.

**AFFIRMED AS AMENDED.**