# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 08-502

JAMES MICHAEL MCMILLIN

VERSUS

JENNIFER BARKDULL MCMILLIN

************

## APPEAL FROM THE
## SEVENTH JUDICIAL DISTRICT COURT
## PARISH OF CONCORDIA, NO.  39500 "B"
## HONORABLE LEO BOOTHE, DISTRICT JUDGE

************

## JAMES T. GENOVESE
## JUDGE

************

Court composed of Ulysses G. Thibodeaux, Chief Judge, John D. Saunders, Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.

Saunders, J., dissents and assigns reasons.

Gremillion, J., concurs in part, dissents in part, and assigns reasons.

**AFFIRMED IN PART, AS AMENDED;**
**REVERSED IN PART; AND RENDERED.**

**Madaline Cross Gibbs**
**Watson, McMillin & Harrison, L.L.P.**
**Post Office Box 169**
**St. Joseph, Louisiana 71366**
**(318) 766-3231**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **James Michael McMillin, Sr. and**
     **Mabelene Sigens McMillin**

**Sherri Lynn Gregoire**
**Avant & Falcon**
**Post Office Box 2667**
**Baton Rouge, Louisiana 70821**
**(225) 387-4462**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jennifer Barkdull McMillin (Brashier)**

**GENOVESE, Judge.**

In this grandparent visitation and related contempt case, the mother appeals the trial court's judgment awarding grandparent visitation rights and finding the mother in contempt of court for wilful disobedience of a prior court order of visitation. The mother appeals. We affirm in part, as amended, reverse in part, and render judgment.

## FACTS

James Michael McMillin (James) and Jennifer Barkdull (Jennifer) were married on May 10, 2003. On March 30, 2004, one child, Emily, was born of the marriage. The parties were divorced on April 5, 2005. A joint custody implementation order was entered into by the parties and attached to their divorce decree. In accordance therewith, joint custody was awarded, and Jennifer was granted the primary physical custody of Emily, subject to a specific visitation schedule in favor of James.

After experiencing difficulties with regard to visitation and child support, James filed a Rule for Contempt and Change in Physical Custody on November 15, 2005. While this rule was pending, James met an untimely death on August 5, 2006.

On August 17, 2006, a Motion and Order to Substitute Party Plaintiffs was filed by James Michael McMillin, Sr., and Mabelene Sigens McMillin (the McMillins), parents of James and paternal grandparents of Emily, requesting visitation privileges with their granddaughter. On October 26, 2006, a Consent Judgment, approved by all counsel, was signed, establishing an agreed-upon grandparent visitation schedule. Though disputed by Jennifer, the McMillins contend that they have not been able to exercise the grandparent visitation privileges afforded them pursuant to the October 26, 2006 Consent Judgment. In the interim, Jennifer remarried, and her new husband, Jake Brashier, adopted Emily on April 16, 2007.

1

On April 18, 2007, the McMillins filed a Motion and Rule for Contempt, and, on May 3, 2007, Jennifer filed an Answer, Intervention[,] and Cross Rule which included an exception of no cause of action. All matters were heard by the trial court with testimony given on October 8, 2007. The matter was taken under advisement, and the trial court rendered judgment on January 9, 2008; (1) denying Jennifer's exception of no cause of action; (2) affording the paternal grandparents (the McMillins) specified visitation privileges; (3) ordering Jennifer to inform Emily as to the existence of her biological father (James) within thirty days; and, (4) finding Jennifer in contempt of court and ordering her to pay a $500.00 fine and to serve three months in the parish prison, which was suspended provided she lawfully complied with all orders of court. Jennifer has appealed this judgment, presenting seven assignments of error.

## ASSIGNMENTS OF ERROR

On appeal, Jennifer asserts the following seven assignments of error:

1.  The trial court erred in failing to notice the failure of the [A]ppellees to state a cause of action under La.R.S. 9:344 and by therefore denying the [e]xception of [n]o [c]ause of [a]ction;

2.  The trial court erred in granting excessive visitation rights to [A]ppellees under La.R.S. 9:344 and/or [La.Civ.Code] art. 136;

3.  The trial court erred in failing to afford appropriate deference to Jennifer and Jake Brashier to determine when Emily should be told about her biological relationship to James Michael McMillin;

4.  The trial court erred in ordering that the parties share the transportation for Emily's visitation with [A]ppellees;

5.  The trial court erred in finding Jennifer Brashier in contempt of court;

6.  The trial court erred in failing to specify the grounds for

2

finding Jennifer Brashier in contempt; and,

7.     [The trial court erred in f]ailing to make provisions for visitation where the visitation of the [A]ppellees falls on/near a holiday.

**Standard of Review**

This court in *Love v. E.L. Habetz Builders, Inc.,* 01-1675, pp. 3-4 (La.App. 3 Cir. 6/26/02), 821 So.2d 756, 760-61 (citations omitted), set forth the standard of review to be applied by an appellate court as follows:

> It is well settled in Louisiana that findings of fact of the trial court will not be disturbed on appeal unless they are manifestly erroneous or clearly wrong. As long as the findings of the trial court are reasonable in light of the record, the appellate court may not reverse even if it would have weighed the evidence differently as a trier of fact.

> On the other hand, when reviewing a question of law, the appellate court must simply decide whether the trial court was legally correct or incorrect. "If the trial court's decision was based on its erroneous application of law, rather tha[n] on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court." In fact, the appellate court must conduct a *de novo* review of the entire record when it finds a reversible error of law or manifest error.

**Assignment of Error No. 1 (Exception of No Cause of Action)**

Jennifer contends that the McMillins have failed to state a cause of action under La.R.S. 9:344, which reads as follows:

> A. If one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage, the parents of the deceased, interdicted, or incarcerated party without custody of such minor child or children may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

> B. When the parents of a minor child or children live in concubinage and one of the parents dies, or is incarcerated, the parents of the deceased or incarcerated party may have reasonable visitation rights to the child or children during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

3

C. If one of the parties to a marriage dies or is incarcerated, the siblings of a minor child or children of the marriage may have reasonable visitation rights to such child or children during their minority if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.

D. If the parents of a minor child or children of the marriage are legally separated or living apart for a period of six months, the grandparents or siblings of the child or children may have reasonable visitation rights to the child or children during their minority, if the court in its discretion find that such visitation rights would be in the best interest of the child or children.

Jennifer is correct in her assertion that La.R.S. 9:344 is inapplicable. Louisiana Revised Statutes 9:344(A) specifically provides for grandparent visitation "[i]f one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage . . ." and "the court in its discretion finds such visitation rights would be in the best interest of the child or children." It is noteworthy that James was divorced at the time of his death and neither interdicted nor incarcerated. Therefore, being divorced prior to his death, James was not a party to the marriage; and, he was neither interdicted nor incarcerated at the time. Hence, La.R.S. 9:344 is inapplicable; the McMillins are not entitled to grandparent visitation under that particular statute; and, the trial court committed legal error in not granting Jennifer's exception of no cause of action as to La.R.S. 9:344 only. *See Stracener v. Joubert,* 05-1121 (La.App. 3 Cir. 3/1/06), 924 So.2d 430. We, therefore, reverse the judgment of the trial court as to its denial of the exception of no cause of action only as it pertains to La.R.S. 9:344, and we sustain the exception of no cause of action only as it pertains to La.R.S. 9:344.

Though we find that La.R.S. 9:344 is inapplicable to the instant case, we do find that La.Civ.Code art. 136 is applicable based on the facts in the record. Louisiana Civil Code Article 136 provides as follows:

A. A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child.

B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:

(1) The length and quality of the prior relationship between the child and the relative.

(2) Whether the child is in need of guidance, enlightenment, or tutelage which can best be provided by the relative.

(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.

(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.

(5) The mental and physical health of the child and the relative.

C. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article.

In accordance with La.Civ.Code art. 136(B), under extraordinary circumstances, a relative by blood (in this case, paternal grandparents) "may be granted reasonable visitation rights if the court finds that it is in the best interest of the child." Of the five favors set forth under La.Civ.Code art. 136(B), the trial court found factors one, two, four, and five to have been satisfied and favorable to the paternal grandparents. The trial court found factor number three to be inapplicable, considering the tender age of the child.

The record before us clearly indicates that the McMillins were afforded grandparent visitation by Consent Judgment after their son's death, but before the subsequent adoption of Emily by Jennifer's new husband. Therefore, it is clear that

5

the grandparents were exercising visitation privileges prior to the adoption. Though this court is well aware of the legal effects of an adoption, a subsequent adoption neither nullifies nor negates the provisions of La.Civ.Code art. 136(B), which is the last legislative pronouncement addressed to that issue. The Consent Judgment affording the McMillins grandparent visitation prior to the adoption certainly creates the extraordinary circumstance required under La.Civ.Code art. 136(B), and the facts in the record, including the testimony at trial, clearly establish that grandparent visitation (in this case, as opposed to no paternal grandparent visitation) is in the best interest of the child.

After full consideration of La.Civ.Code art. 136, the trial court found that the McMillins "should and must be awarded visitation." We agree and find no manifest error or abuse of discretion in the factual determinations made by the trial court. We, therefore, affirm the trial court's judgment awarding the McMillins grandparent visitation with Emily.

The trial court then set out specified visitation privileges to be afforded the McMillins. These visitation privileges will be addressed below in Jennifer's assignments of error numbers two, four, and seven.

***Assignments of Error Nos. 2, 4, and 7 (Grandparent Visitation)***

We will address the second, fourth, and seventh assignments of error together, as these three assignments of error address the issue of the grandparent visitation set forth in the trial court's judgment. Jennifer contends that the trial court granted excessive grandparent visitation rights, that the trial court erred in ordering the parties to share the transportation relative to implementing the grandparent visitation, and that the trial court failed to make provisions for visitation where the grandparent visitation would fall on or near a holiday.

6

The trial court's visitation schedule basically provides for grandparent visitation on the first and third weekends of each month from Friday at 6:00 p.m. until Sunday at 6:00 p.m. with each party meeting halfway between their respective domiciles and each party bearing their respective costs of transportation. The schedule also provides for grandparent visitation during the Christmas holidays and the summertime. We note that the visitation schedule set forth in the trial court's judgment closely resembles the customary visitation privileges afforded a non-custodial parent in a divorce proceeding. Having found that the grandparents are entitled to visitation pursuant to La.Civ.Code art. 136, we must now examine the trial court's visitation schedule for reasonableness and excessiveness as argued by Jennifer in these assignments of error.

The term "reasonable visitation" is not particularly defined under our law. However, we noted in *Ray v. Ray,* 94-1478, p. 3 (La.App. 3 Cir. 5/3/95), 657 So.2d 171, 173, "[t]hrough [La.Civ.Code art. 136], the law provides a means of maintaining family relationships where they might otherwise be lost to the child." In the instant case, La.Civ.Code art. 136 serves to ensure that Emily maintains contact with the parents of her deceased father.

Considering the tender age of the child, and the facts in the record of this case, we do not find such extensive grandparent visitation, as was awarded by the trial court, to be reasonable. This is especially true considering the recent jurisprudence underlining "the interest of parents in the care, custody, and control of their children . . ." as explained in *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 2060 (2000), and its progeny.

In recognizing this paramount right of a parent, we quote approvingly from *Wood v. Wood,* 02-860, p. 8 (La.App. 1 Cir. 9/27/02), 835 So.2d 568, 573, *writ*

7

*denied,* 02-2514 (La. 3/28/03), 840 So.2d 565, wherein the first circuit, considering visitation of a nonparent, and discussing *Troxel,* expressly recognized "a fit parent's constitutionally protected fundamental right of privacy in child rearing, . . ." and opined that a trial judge must "remember that any rights of nonparents are ancillary to that of a fit parent." The appellate court cautioned that "the trial court must be aware that as nonparent visitation increases, the infringement and burden on the parent's fundamental right of privacy in child rearing increases proportionally" and that "[v]isitation that unduly burdens parental rights would be unconstitutional, regardless of the provisions of statutory law. *Reinhardt v. Reinhardt,* 97-1889, p. 5 (La.App. 1 Cir. 9/25/98), 720 So.2d 78, 80, *writ denied,* 98-2697 (La.12/18/98), 734 So.2d 635, *cert. denied*, 526 U.S. 1114, 119 S.Ct. 1761, 143 L.Ed.2d 792 (1999)." *Id.* at 573.

The record in these proceedings indicates that Jennifer and the McMillins live approximately three hours apart from each other. Jennifer lives in Livingston, Louisiana; the McMillins live in Monterey, Louisiana. Jennifer is caring for three children. In addition to Emily, Jennifer and her new husband have an infant, and Jennifer has an eight-year-old child. Considering Jennifer's financial resources and time constraints, other visitation set aside for maternal grandparents and grandparents via adoption, compounded by the expense and three-hour travel time necessary to implement the present paternal grandparent visitation schedule of two weekends a month, we find the trial court's grandparent visitation schedule, in part, to be excessive, unreasonable, unduly burdensome, and manifestly erroneous.

Accordingly, we amend the trial court's visitation schedule to reduce the grandparent visitation from two weekends a month to one weekend a month. In order to implement said change, we delete from the visitation schedule the grandparent

8

visitation on the first weekend of each month. In doing so, this will allow Jennifer to have her children on more holidays and addresses her concerns in that regard. Grandparent visitation on the third weekend of each month remains intact. Regarding the issue of transportation, considering time constraints, safety factors, status, and station in life of the parties, we find the McMillins to be in a better position to provide transportation for the exercise of their visitation privileges. Therefore, we amend the trial court's visitation schedule by requiring the McMillins to be solely responsible for transportation. All other aspects of the trial court's judgment relative to grandparent visitation are affirmed and remain in full force and effect.

### *Assignment of Error No. 3 (Disclosure of Existence of Biological Father)*

In the third assignment of error, Jennifer contends that the trial court erred in ordering her to tell Emily of the existence of her biological father. We agree. In following the mandates of *Troxel,* we find that Jennifer, the sole surviving biological parent, is the proper and appropriate person to make the determination, as she sees fit, as to when Emily should be told about her biological father. That is a parental decision, not a court decision. The trial court erred in ordering Jennifer to tell Emily of the existence of her biological father, and we reverse the trial court's judgment in that regard.

### *Assignments of Error Nos. 5 and 6 (Contempt)*

Because the fifth and sixth assignments of error both address the issue of contempt, we will address them together. Jennifer contends that the trial court erred in finding her in contempt of court and in failing to specify the grounds therefor. She does not contest her sentence. In *Gautreau v. Gautreau,* 97-612 (La.App. 3 Cir. 10/8/97) 702 So.2d 851, we held that there must be a reasonable basis in the record for a finding of contempt.

9

Louisiana Code of Civil Procedure Article 224(2) defines constructive contempt of court as a "[w]illful disobedience of any lawful judgment, order, mandate, writ or process of court[.]" The trial court made a specific finding of fact that Jennifer wilfully disobeyed its October 26, 2006 Consent Judgment. A review of the testimony in the record clearly indicates that the McMillins were denied their grandparent visitation on at least two occasions, specifically on March 9, 2007, and on March 23, 2007. There was a reasonable basis for the trial court finding Jennifer in contempt of court, and the trial court did not err in finding that Jennifer wilfully disobeyed the trial court's October 26, 2006 Consent Judgment. The trial court is vested with great discretion in determining whether a person should be held in contempt of court for disobeying a court order, and the decision will be reversed only when the appellate court discerns an abuse of discretion. We find no such abuse of discretion by the trial court on the contempt issue in this case. *See Mill Creek Homeowners Ass'n, Inc. v. Manuel*, 04-1386 (La.App. 1 Cir. 6/10/05), 916 So.2d 271. Accordingly, we affirm the trial court's judgment finding Jennifer in contempt of court. Since Jennifer did not assign as error her contempt sentence, we need not address same.

**DISPOSITION**

For the foregoing reasons, we affirm the trial court's denial of the exception of no cause of action filed by Jennifer Barkdull (Brashier) as it pertains to La.Civ.Code art. 136. We reverse the trial court's denial of that exception as it pertains to La.R.S. 9:344 and sustain said exception only as it pertains to La.R.S. 9:344. We affirm in part the trial court's judgment awarding grandparent visitation to James Michael McMillin, Sr., and Mabelene Sigens McMillin, but amend the judgment to reduce the grandparent visitation to one weekend (the third weekend) of every month with the

10

paternal grandparents being solely responsible for the transportation necessary to implement their visitation. All other aspects of the trial court's judgment relative to visitation shall remain in full force and effect. We reverse the trial court's judgment requiring that the child, Emily (McMillin) Brashier, be told of the existence of her biological father, James Michael McMillin, Jr., and the nature of her relationship with the McMillins. Finally, we affirm the trial court's judgment finding Jennifer Barkdull McMillin Brashier in contempt of court. All costs are equally divided among the parties.

**AFFIRMED IN PART, AS AMENDED; REVERSED IN PART; AND RENDERED.**

NUMBER 08-502

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JAMES MICHAEL MCMILLIN

VERSUS

JENNIFER BARKDULL MCMILLIN

**Saunders, J., dissents and assigns written reasons.**

The majority opinion agrees with Jennifer's assertion that La.R.S. 9:344 is inapplicable, because it only allows for grandparent visitation "[i]f one of the parties to a marriage dies, is interdicted, or incarcerated, and there is a minor child or children of such marriage. . ..." After correctly analyzing La.R.S. 9:344 by noting that James Michale McMillin was divorced and not "party to a marriage," the majority then goes on to assert that La.Civ.Code art. 136 *is* applicable, due to the "extraordinary circumstances," of the case. This assertion is made, despite the fact that La.Civ.Code art. 136(C) specifically states, "[i]n the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article." Thus it would appear that, with or without an "extraordinary circumstance," La.Civ.Code art. 136 cannot defeat the clear language of La.R.S. 9:344.

It is also clear that La.Civ.Code art. 136 cannot defeat the legal effects of a valid adoption. Louisiana Children's Code Article 214(C), states in no uncertain terms, that:

> . . . upon adoption: the blood parent or parents and *all other blood relatives of the adopted person*, except as provided by Ch.C. Article 1264, are relieved of *all of their legal duties and divested of all of their legal rights with regard to the adopted person*. . . (emphasis added)

Thus, the McMillins, as parents of the divorced father whose child was

subsequently adopted, have been divested of "all their legal rights," with regard to

Emily. This analysis is consistent with our supreme court's ruling in *Smith v.*

*Trosclair*, 321 So.2d 514 (La. 1975). In *Smith*, a maternal grandmother had a

judgment granting her visitation with her grandchildren whom had since been

adopted by their father's second wife. The court found that, "the decree of

adoption procured by the defendant's second wife judicially severed all of

plaintiff's rights and duties vis-a-vis her grandchildren." *Smith v. Trosclair*, 321

So.2d 514,515 (La. 1975).

To prevent the legal effects of adoption from being overly harsh, La. Ch.C.

art. 1264 does provide a limited exception to the permanent severing of all legal

ties with adopted children. La. Ch.C. art. 1264 states:

> Nothwithstanding any provision of law to the contrary, *the natural*
> *parents of a deceased party to a marriage dissolved by death*, whose
> child is thereafter adopted  and the parents of a party who has
> forfeited the right to object to the adoption of his child pursuant to
> Article 1245 may have limited visitation rights to the child so
> adopted. **(**emphasis added**)**

Notably, the McMillins are unable to fit under this exception, because on March 2,

2004 their son, James Michael McMillin, chose to divorce his wife, Jennifer. Their

child, Emily, was born just days later, on March 30, 2004. Divorce was granted on

April 6, 2005, and James Michael McMillin died on August 2, 2006.

> Louisiana Civil Code Article 9 - When a law is clear and
> unambiguous and its application does not lead to absurd
> consequences, the law shall be applied as written and no further
> interpretation may be made in search of the intent of the legislature.

The Louisiana Children's Code and La. R.S. 9:344 are clear and

unambiguous and should be applied as written in accordance with La.Civ.Code

art. 9. While I am sympathetic with the McMillins' desire to visit with Emily, I

cannot escape the conclusion that the legislature, "manifestly intended to

subordinate [the grandparents'] wishes to the necessity that the adoptive child become a full and complete member of [her] adoptive home." *Smith* 321 So.2d 514,516. Accordingly, I respectfully dissent.